STATE OF NORTH CAROLINA v. WALTER CHEEK

No. 7619SC388

(Filed 3 November 1976)

1. **Criminal Law § 148— prayer for judgment continued — no appeal lies**

    Where the trial court continued prayer for judgment on an assault with a deadly weapon charge for five years upon the condition that defendant not attempt to escape from prison or break any state or federal law, such conditions did not amount to punishment which would render the judgment entered on the guilty verdict as to the assault charge appealable; therefore, defendant's assignment of error with respect to the admission of certain evidence relevant to the assault charge was not properly before the court on appeal.

2. **Homicide § 21— exchange of gunfire — subsequent death — possibility of intervening person — sufficiency of evidence**

    Evidence was sufficient for the jury in an assault and homicide prosecution where it tended to show that defendant threatened to kill

both his assault victim, whom he had previously assaulted, and his homicide victim; immediately thereafter the homicide victim pulled a gun and an exchange of gunfire ensued; defendant fired first, the bullet striking beneath the assault victim's foot; a total of eight shots were fired; the homicide victim was found thereafter suffering from severe gunshot wounds; and both parties stipulated that death was a result of gunshot wounds. The possibility that defendant's shots were not the ones which caused the victim's death but that another person intervened between the time the victim was first shot and the time of death was a matter for determination by the jury and was irrelevent to the issue before the court on a motion to dismiss as in nonsuit.

APPEAL by defendant from *Albright, Judge.* Judgment entered 30 January 1976. Heard in the Court of Appeals 16 September 1976.

Defendant was charged by two indictments in proper form with the second-degree murder of Parks Patterson and the assault of Betty Jordan with a deadly weapon and with the intent to kill. The jury returned verdicts of guilty of voluntary manslaughter and assault with a deadly weapon. Defendant was sentenced on the manslaughter charge to imprisonment for a term of 20 years, and prayer for judgment was continued on the assault with a deadly weapon charge for five years upon the condition that defendant not attempt to escape from prison or break any state or federal law.

The State's first witness was Betty Jordan, who testified, in substance, that she had lived with the defendant in Liberty, North Carolina, for approximately six years but ceased cohabitation with him in May 1975. On 7 June 1975, she spent most of the day with Parks Patterson, whom she had known for some time. She saw defendant three times that day, and on one occasion "Walter Cheek and I argued which is not unusual." At approximately 10:30 p.m., she and Patterson arrived at a friend's house only to discover the door locked and entry impossible. They crossed Murphy Street to the house of Viola Swarringer where defendant was sitting on the porch. Defendant jumped up and shouted that he was going to kill both Jordan and Patterson. Then, "Walter Cheek started shooting." The first bullet hit just under Jordan's right foot, and she began to crawl away around the Swarringer house where she remained until the gunfire had stopped. Patterson had a gun which he fired four times, but defendant "shot first. The first shot was fired just as I was turning to go around the house.

The first and second shots that I heard were right after the other. There were eight shots in succession, one right after the other."

Ronald Morgan of the Liberty Police Department testified that he received a call at approximately 11:03 p.m. concerning the shooting incident. He arrived at the scene within two or three minutes but did not see Patterson at that time. He subsequently found Patterson lying wounded in a ditch on Carter Street some 1,000 yards from the scene of the shooting. He observed that Patterson was wounded in the right hip and the right side slightly in front of the arm and that "there was a trail of blood leading from the body to about 100 yards behind the Swarringer residence."

The State and defendant stipulated that Patterson died on 7 June 1975 as the direct and proximate result of gunshot wounds, that Patterson's blood alcohol content was equivalent to a .39 on a breathalyzer machine, and that if a medical examiner were called, he would testify that Patterson "would have been expected to have been in a stuporous condition with marked loss of coordination, judgment and reception."

*Attorney General Edmisten, by Associate Attorney Alan S. Hirsch, for the State.*

*Bell & Ogburn, P.A., by Deane F. Bell and William H. Heafner, for defendant appellant.*

MORRIS, Judge.

[1]  Defendant assigns as error the court's allowing into evidence, over defendant's objections, testimony with respect to prior assaults on prosecuting witness Betty Jordan by defendant. This testimony, of course, is relative to the assault charge as to which defendant was found guilty and the court continued prayer for judgment. In *State v. Bryant*, 23 N.C. App. 373, 374, 208 S.E. 2d 723 (1974), Judge Britt, speaking for the Court, said: "It is well established that a 'prayer for judgment continued' is not a final judgment, therefore, it is not appealable." However, the rule is different where conditions are imposed upon the continuation of the entry of judgment.

"When the prayer for judgment is continued there is no judgment—only a motion or prayer by the prosecuting officer for judgment. And when the court enters an order

continuing the prayer for judgment and at the same time imposes conditions amounting to punishment (fine or imprisonment) the order is in the nature of a final judgment, from which the defendant may appeal. Punishment having been once inflicted, the court has exhausted its power and cannot thereafter impose additional punishment." *State v. Griffin,* 246 N.C. 680, 683, 100 S.E. 2d 49 (1957).

We cannot say that the conditions imposed here amounted to punishment. Certainly no fine or term of imprisonment was imposed. Defendant was required to refrain from attempting to escape and to refrain from breaking any state or federal law. These are requirements to obey the law, an obligation which he already had as a citizen. Therefore, it appears that the judgment entered on the guilty verdict as to the assault charge is not appealable, and the question raised by defendant is not before us. However, if it were, we would, upon the clear law in this State, find no error in the court's rulings.

[2]   Defendant's only valid assignment of error is to the failure of the trial court to grant his motion to dismiss at the close of State's evidence. In ruling upon such a motion in a criminal prosecution, the trial court is required to consider the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom. *State v. Caron,* 288 N.C. 467, 219 S.E. 2d 68 (1975); *State v. Widemon,* 26 N.C. App. 245, 215 S.E. 2d 826 (1975); 2 Strong, N. C. Index 2d, Criminal Law, § 104, pp. 648-49 and cases cited therein. The evidence, taken in the light most favorable to the State, tends to show that defendant threatened to kill both Jordan, whom he had previously assaulted, and Patterson; that immediately thereafter Patterson also pulled a gun and an exchange of gunfire ensued; that defendant fired first, the bullet striking beneath Jordan's right foot; that a total of eight shots were fired; and that Patterson was found thereafter suffering from severe gunshot wounds. Both parties stipulated that death was a result of gunshot wounds. Defendant argues that his motion should have been granted because there was no direct evidence that defendant's shots were those which caused Patterson's death and because there was an absence of blood within 100 yards of the scene of the shooting. Defendant suggests that another person intervened between the time Patterson was first shot and the time of death. However, the possibility of such an intervening factor is a matter for the determination of the

jury and is irrelevant to the issue before the court on a motion to dismiss as in nonsuit. "Regardless of whether the evidence is direct, circumstantial, or both, if there is evidence from which a jury could find that the offense charged has been committed and that defendant committed it, the motion to nonsuit should be overruled." *State v. Caron, supra,* at 469. The evidence was sufficient to overcome defendant's motion.

No error.

Judges HEDRICK and ARNOLD concur.