STATE OF NORTH CAROLINA v. LUTHER PRYOR, JR.

No. 826SC18

(Filed 5 October 1982)

1. **Robbery § 4.5— aiding and abetting armed robbery—sufficiency of evidence**

   The State's evidence was sufficient to enable the jury to find that defendant aided and abetted an armed robbery of a service station in that he (1) intended to aid the actual perpetrators, (2) was constructively present at the crime scene, and (3) communicated to the perpetrators his intent to aid in the commission of the crime where it tended to show that defendant knew the robbery was planned; defendant drove the perpetrators to the area of the robbery, dropped them off at a point near the service station, waited in the vicinity, picked them up later at a restaurant near the service station, and drove them from the scene; and defendant shared in the proceeds of the robbery.

2. **Criminal Law § 113.1— failure to summarize evidence favorable to defendant—prejudicial error**

   The trial court gave a prejudicially incomplete instruction on the law arising from the evidence and failed to give equal stress to the contentions of the State and the defendant where the court summarized the evidence presented by the State but failed to make any reference to evidence brought out on cross-examination which tended to exculpate the defendant or to evidence of the State itself which tended to raise inferences favorable to the defendant. G.S. 15A-1232.

3. **Criminal Law § 117.2— insufficient instruction on interested witnesses**

   Where the trial court instructed the jury to scrutinize the testimony of defendant's accomplices with care and caution, and the accomplices gave testimony that was in some respects favorable to the defendant, it was prejudicial error for the court to fail to give a qualifying instruction to the effect that, if after such scrutiny, the jury believed the testimony of the accomplices, it should be given the same weight as any other credible evidence.

1

APPEAL by defendant from *Smith (Donald L.), Judge.* Judgment entered 31 May 1978 in Superior Court, HALIFAX County. Heard in the Court of Appeals 31 August 1982.

Defendant was charged in a proper bill of indictment with armed robbery. He was found guilty as charged. From judgment imposing an active sentence, defendant gave timely notice of appeal and counsel was appointed to perfect appeal. However, the appeal was never perfected. On 9 October 1981 the Superior Court appointed new appellate counsel. On 16 November 1981 this Court granted defendant's petition for writ of certiorari.

The issues on appeal dispositive of the case are whether the court should have granted defendant's motion to dismiss for insufficient evidence and whether the court erred in its instructions to the jury.

*Attorney General Edmisten, by Associate Attorney David Ray Blackwell, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Lorinzo L. Joyner, for defendant appellant.*

JOHNSON, Judge.

During the early evening hours of 6 February 1978, Terry Brown, operator of the Gates Service Station in Scotland Neck, and Curtis Washington, an employee, were robbed at gun point by Cecil Dickens and Richard Dickens. Cecil and Richard Dickens pled guilty to robbery with a firearm and testified on behalf of the State. The defendant, Luther Pryor, Jr., pled not guilty to the charge of robbery with a firearm. The State proceeded against the defendant on the theory that he aided and abetted Cecil and Richard Dickens, the actual perpetrators of the robbery. Both Cecil and Richard Dickens appeared as witnesses for the State pursuant to a plea agreement.

At trial, the State offered evidence tending to show that Curtis Washington, the Gates Service Station employee, planned the robbery and supplied the gun that was used. Cecil Dickens testified that on a Sunday evening previous to the robbery, he, Richard Dickens, defendant, and Curtis Washington were together at his aunt's house. Cecil Dickens stated that on this evening when plans for the robbery were made, defendant was

"inside of the house" when Washington gave him the gun on the outside, and that when Washington talked to Cecil about it first, "he (defendant) was there, but I don't think he heard that."

Terry Brown, the service station operator, testified that he saw the defendant, Cecil Dickens, and Richard Dickens drive past his service station in defendant's Volkswagen on the evening of 6 February 1978. Approximately 15 to 30 minutes later, the two Dickens men returned to the station on foot. Cecil Dickens then pulled a gun, pointed it at Brown, and demanded money from Brown and Washington. Cecil and Richard Dickens then ran from the station and across the parking lot of a nearby tire company. Brown did not see the two men again that evening.

Brown testified that he saw the defendant's Volkswagen pull out of a car wash about one and one half blocks from his station, in the vicinity of Hardee's, soon after the robbery. He did not see the driver of that car or see who else, if anyone, was in the car. Brown last saw the defendant some 15 to 30 minutes before the robbery.

Later in the evening of 6 February 1978, Halifax County law enforcement officers stopped the car driven by the defendant on Highway 903 headed in the direction of Littleton. Cecil Dickens, Richard Dickens, and two females were passengers in the car. Deputy Sheriff Cloyd did not observe where any of the passengers were sitting.

Sheriff Cloyd told the defendant that the car fit the description of one suspected of being involved in a Scotland Neck robbery and asked defendant to return to the sheriff's office for questioning. The defendant voluntarily accompanied the officers and subsequently gave them permission to search his car. During the search, a loaded .22 caliber pistol was found under the right front seat on the passenger's side of the car. No weapons or money were found on the defendant.

When questioned, the defendant voluntarily gave the police the following statement which the State introduced into evidence:

"My name is Luther Pryor. I am sixteen years old. I live at Route 2, Box 121-A, Scotland Neck, North Carolina. On February 6, 1978 about 6:30 P.M. Richard and Cecil and I drove to the Gates Station lot and stopped. Cecil told Curtis

'We are going to rob you.' Curtis said 'No, man, don't do it tonight because the Bunch folks are watching and the man next door.' I told Curtis 'Don't worry about it, man.' I drove off back up Main Street and put them off at the Little Mint and drove up the street to the Zip Mart and I turned around and picked Richard and Cecil up in front of Hardee's. I took them home and picked up my old lady, Ann Dickens, and headed to Roanoke Rapids to the bus station and then we got stopped. When I took Richard and Cecil home, Cecil gave me ten dollars and told me they had robbed the Gates gas station. I knew Richard and Cecil had robbed the Gates station when they got into my car because they told me at that time. I gave my girl, Ann Dickens, nine dollars at Gene Harrell's store to keep for me and the money I gave her was money from the Gates station."

Cecil Dickens testified that the defendant drove him and Richard Dickens "uptown" and then went to the car wash about one and a half blocks away to clean out his car. The car wash was out of sight of the service station. Cecil stated that nobody was waiting for him after he left the service station, but that he could not remember what he did then because he'd had too much to drink that evening.

On cross-examination, Richard Dickens stated that prior to the robbery no one had any conversation in Luther Pryor's presence about robbing the service station or about the gun. Richard Dickens testified that he was drunk at the time of the robbery and could not remember what became of Luther after he dropped Cecil and Richard at the service station.

At the close of the State's evidence, defendant's motion to dismiss was denied. Defendant offered no evidence, and his renewed motion was also denied. The case was submitted to the jury on the theory that defendant aided and abetted the actual perpetrators, Richard and Cecil Dickens.

Defendant first assigns error to the failure of the trial court to grant defendant's motion to dismiss at the conclusion of the State's evidence.

The standard for the trial court and for this Court is whether the evidence is sufficient for a rational trier of fact to find proof beyond a reasonable doubt of every essential element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979); *State v. Revelle*, 301 N.C. 153, 270 S.E. 2d 476 (1980). Defendant argues the State presented insufficient evidence from which the jury could find that the defendant aided and abetted the perpetrators in the commission of the crime of armed robbery. For reasons set forth below, we disagree.

I

In ruling upon a motion to dismiss, the court must consider the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference therefrom. *See State v. Smith*, 300 N.C. 71, 265 S.E. 2d 164 (1980). The State's evidence is sufficient if there is substantial evidence to establish each and every element of the crime charged. *See State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *State v. Smith, supra; Thompson v. Board of Education*, 292 N.C. 406, 233 S.E. 2d 538 (1977).

The State relied upon a theory of aiding and abetting to carry the armed robbery charge to the jury. The elements necessary for the State's case were set forth by our Supreme Court in *State v. Sanders*, 288 N.C. 285, 290-91, 218 S.E. 2d 352, 357 (1975), *cert. denied*, 423 U.S. 1091, 96 S.Ct. 886, 47 L.Ed. 2d 102 (1976).

"The mere presence of the defendant at the scene of the crime, even though he is in sympathy with the criminal act and does nothing to prevent its commission, does not make him guilty of the offense. *State v. Rankin*, 284 N.C. 219, 200 S.E. 2d 182 (1973); *State v. Gaines*, 260 N.C. 288, 132 S.E. 2d 485 (1963). To support a conviction, the State's evidence must be sufficient to support a finding that the defendant was present, actually or constructively, with the intent to aid the perpetrators in the commission of the offense should his assistance become necessary and that such intent was communicated to the actual perpetrators. The communication or

intent to aid, if needed, does not have to be shown by express words of the defendant but may be inferred from his actions and from his relation to the actual perpetrators. *State v. Hargett,* 255 N.C. 412, 121 S.E. 2d 589 (1961); *State v. Holland,* 234 N.C. 354, 67 S.E. 2d 272 (1951)."

As noted below, the State's evidence is sufficient to prove each and every element.

A.   Intent

[1]   Defendant contends that the evidence fails to establish that he shared the felonious intent to rob the service station. Specifically, defendant argues that the State did not show that defendant was part of the plan to rob the service station or that he knew of such plan or intended to aid in its commission.

Defendant cites *State v. Kendrick,* 9 N.C. App. 688, 177 S.E. 2d 345 (1970), for the proposition that before defendant can be guilty as an aider or abetter of a felony, he must share the felonious intent of the actual perpetrators. Defendant argues that the testimony of the perpetrators negates any inferences that defendant had any prior knowledge of the robbery plan or that he was knowingly involved in its commission.

However, the intent to aid or the showing of a felonious purpose may be inferred from the defendant's actions and his relation to the perpetrators. There need be no express words communicating the intent to aid or indicating that defendant shared a felonious purpose, *State v. Sanders, supra.*

Defendant's own statement to Officer Gus Sherman indicates that one of the two perpetrators told Curtis Washington, an employee at the service station, in defendant's presence, that they were going to rob the service station. Defendant stated, "Don't worry about it, man," drove up the street and let the perpetrators out. The statement further indicates that he picked them up later in his vehicle, knew that they had robbed the service station and subsequently drove away with them.

Terry Brown, the robbery victim, testified that he saw the defendant and two males, later identified as the Dickens in the Volkswagen at the Gates Service Station 15 to 30 minutes before the robbery, and subsequent to the robbery saw the same

Vokswagen drive away from the vicinity of Hardee's, some one block from the Gates Service Station.

Defendant admitted in his statement that he profited from the robbery. Later that evening, the defendant and the two robbers were stopped in defendant's vehicle. The Volkswagen also contained a gun and money.

The State's evidence clearly supports the inference that defendant intended to aid the perpetrators. Defendant's own statement indicates that he knew the robbery was planned, he dropped the perpetrators off in the area, picked them up later and subsequently carried them from the scene. Finally, defendant shared in the proceeds of the robbery. Such evidence clearly supports an inference of felonious intent necessary to support an aiding and abetting charge. *See State v. Aycoth,* 272 N.C. 48, 157 S.E. 2d 655 (1967).

B.  Constructive Presence

Defendant next contends that the State failed to establish that he was constructively present at the Gates Service Station during the armed robbery, accompanied the perpetrators to the vicinity of the offense, or remained in the vicinity for the purpose of rendering aid. Defendant argues the evidence is insufficient to establish his whereabouts during the armed robbery.

A person may be guilty as an aider and abettor if that person " . . . accompanies the actual perpetrator to the vicinity of the offense and, with the knowledge of the actual perpetrator, remains in that vicinity for the purpose of aiding and abetting in the offense and sufficiently close to the scene of the offense to render aid in its commission, if needed, or to provide a means by which the actual perpetrator may get away from the scene upon the completion of the offense." *State v. Price,* 280 N.C. 154, 158, 184 S.E. 2d 866, 869 (1971).

Thus, the State must prove that defendant Pryor remained in the vicinity of Gates Service Station for the purpose of aiding and abetting and was sufficiently close to render aid, if needed, or to provide a means of "get-away."

In his statement to Officer Sherman, defendant said, "I drove off back up Main Street and put them off at the Little Mint and

drove up the street to the Zip Mart. I turned around and picked Richard and Cecil up in front of Hardee's." On cross-examination Officer Sherman testified that, "Mary Ann Dickens told me that the money she was giving me came from Richard and I . . . she also told me that not Richard, but Luther, and she also told me that Luther said he waited at the car wash and picked the boys up and he said he knew they had robbed because he was waiting to pick them up."[1]

Cecil Dickens testified that defendant went to a car wash about one and a half blocks away to clean out his car after dropping him and Richard Dickens off.

Terry Brown testified that he saw the Volkswagen with Luther arriving and containing two other black males at the service station 15 to 30 minutes prior to the robbery. Subsequently, Mr. Brown testified that the two men he saw in the back of the Volkswagen committed the armed robbery, that he saw them running away across the parking lot of the tire company and then, upon running out to the road, saw the Volkswagen in the vicinity of Hardee's, about one block from the service station.

Officer Sherman testified that the Zip Mart is three miles from the Gates Service Station.

In his argument that the State failed to show that he was "constructively present," defendant relies upon *State v. Wiggins*, 16 N.C. App. 527, 192 S.E. 2d 680 (1972) and *State v. Davis*, 50 N.C. App. 674, 274 S.E. 2d 858 (1981). Both cases are distinguishable on their facts as the State has, in the case *sub judice*, brought forth far more circumstantial evidence of defendant's "presence" than either *Davis* or *Wiggins*. In *Davis*, there was *no* evidence linking the defendant to the perpetrators *prior* to the robbery to give rise to the inference that he was purposely present in the vicinity. In *Wiggins*, this Court made a similar finding where the evidence showed that the defendant was at a house some 10 or 15 blocks away from the scene of the robbery and no evidence demonstrated that the defendant was situated where he could give the perpetrator any advice or aid, if needed. While noting

---

1. Despite the hearsay nature of this testimony, it was properly admitted into evidence as no objection was taken at trial, apparently because defendant's own counsel elicited the statement during cross-examination of State's witness.

that the defendant in *Wiggins* was not actually present at the scene, this Court stated that "the actual distance of a person from the place where a crime is perpetrated is not always material in determining whether the person is constructively present . . . A guard who has been posted to give warning or the driver of a 'get-away' car, may be constructively present at the scene of a crime although stationed a convenient distance away. *See* R. Perkins, Criminal Law, Ch. 6, § 8 (2nd ed. 1969), and cases collected there." *Wiggins, supra* at 530, 192 S.E. 2d at 682-83. *Accord State v. Gregory,* 37 N.C. App. 693, 247 S.E. 2d 19 (1978).

The State's evidence was sufficient for the jury to find that the defendant dropped the perpetrators off, waited in the vicinity, was in a position to aid them by providing the "get-away" car, and that this aid constituted "knowing encouragement" to the commission of the armed robbery.

C.  Knowledge of the Principals

Defendant's next contention is that the State failed to prove that defendant communicated his intent to aid in the commission of the crime to the perpetrators. To support his contention, defendant relies on the testimony of Cecil and Richard Dickens to establish their lack of knowledge that defendant intended to aid them or that defendant was standing by for that purpose. However, as our Supreme Court noted in *State v. Sanders, supra,* "The communication or intent to aid, if needed, does not have to be shown by express words of the defendant, but may be inferred from his actions and from his relation to the actual perpetrators."

The jury had sufficient evidence from which it could find that defendant's acts communicated his intent to aid to the perpetrators. The two armed robbers were found in defendant Pryor's car with defendant driving a short time after the robbery. The vehicle contained a .22 caliber pistol. Subsequently, defendant made a statement to Officer Sherman, stating that he heard one of the robbers tell a Gates Service Station employee that "we are going to rob you." This statement was made shortly before the robbery while the robbers were in the back of defendant's vehicle. Defendant then admitted driving away from the station, letting the robbers out at the Little Mint, driving to the Zip Mart, turning

around, and picking the robbers up in front of Hardee's. Defendant acknowledged that he knew they had robbed the service station when they got in the car because they told him. Terry Brown's testimony as to the events subsequent to the robbery show the robbers running off and the defendant's car leaving the vicinity of where the robbers had run. Mr. Brown also testified that Cecil Dickens told Richard Dickens which direction to take as they ran off. Thus, from the evidence, the jury could easily conclude that the robbers ran to where they knew they would be picked up by the defendant, and where defendant was waiting to assist them in their escape.

The evidence, taken as a whole in the light most favorable to the State, was sufficient to enable the jury to find that defendant aided and abetted the armed robbery of the Gates Service Station.

Defendant's first assignment of error is without merit.

II

[2] Defendant's most serious contention is that the trial judge failed to state the evidence and apply the law to the facts as required by G.S. 15A-1232. The challenged portion of the charge is as follows:

"Very simply in this case the State of North Carolina has offered some evidence which tends to show and the State contends does show that on the night in question Richard and Cecil Dickens were for a part of the evening in the presence of Mr. Pryor and that both Mr. Dickens consumed alcoholic beverages and as I remember, it was wine and possibly others and they were both under the influence and have no recollection of a portion of this night, that being February 6, 1978, but that on February 6, 1978, Mr. ~~Sherman~~ Brown, who operates the Gates Service Station was returning and saw the defendant, Mr. Pryor in his Volkswagen automobile leaving the station with two other persons; that—excuse me, strike that. I said Sherman and I meant to say 'Brown' and I am sorry, ladies and gentlemen. I remind you again that you are to take your recollection of the evidence.

That he waved to the defendant and some fifteen to thirty minutes later he observed Cecil and Richard Dickens come up

behind the station and one of them went to the bathroom or to the area of the bathroom and the other went around the building and subsequently Cecil Dickens pulled a gun and demanded money and Mr. Brown reached for his pocket whereupon one of the Dickens said 'Pop him' or something to that effect and again take your own recollection and Mr. Brown gave the money to Mr. Dickens or either or both of them and they ran off across the road; that he saw a gold colored Volkswagen which was Luther's car and that no one—that Mr. Brown gave no one permission to take any money from him and that on the night in question he was scared partly at least for the reason a .22 caliber pistol was in the possession of the Dickens boys."

The trial judge must declare and explain the law arising on the evidence, state the evidence to the extent necessary to explain the application of the law thereto, and refrain from expressing an opinion whether a fact has been proved. G.S. 15A-1232. Implicit in the duty imposed by general requirements of fairness to the parties is the requirement that the judge give equal stress to the State and the defendant in a criminal action. The statute creates a substantial legal right; its provisions are mandatory and failure to comply with them is prejudicial error for which a new trial must be ordered. *State v. Hewett*, 295 N.C. 640, 247 S.E. 2d 886 (1976); *State v. Sanders*, 298 N.C. 512, 259 S.E. 2d 258 (1979).

In its summation, the court did not make any reference to evidence favorable to the defendant, including testimony elicited by the State on direct examination of Cecil and Richard Dickens, which tended to show defendant's lack of involvement in the robbery itself or its planning. The court also failed to summarize evidence, in defendant's out-of-court statement, which tended to show that he learned of the robbery after it had been committed.

On direct examination of State's witness, Cecil Dickens, the State elicited testimony showing that when Cecil and Richard Dickens were in the presence of defendant Pryor on the evening of the robbery, they "didn't talk nothing about it (the Gates Service Station);" that they did not discuss going back to the station for the purpose of robbing it; that no one was waiting for Cecil after the robbery; and that when Curtis Washington gave Cecil the gun with which to rob the station, defendant did not hear the conversation but was inside the house at the time.

Another State's witness, Richard Dickens, testified on cross-examination that prior to the robbery, he had no conversation with the defendant about either the robbery itself or the gun to be used. In response to a question propounded by the court, Richard Dickens testified that to his knowledge, no one had a conversation in defendant's presence about the service station that was robbed.

The gist of the Dickens' testimony on direct and cross-examination was that they, along with Curtis Washington (and not the defendant) planned the robbery. Both defendant's statement and the Dickens' testimony were substantive evidence which, if believed, raised inferences tending to exculpate the defendant as an aider and abettor to the robbery.

*State v. Sanders, supra*, is remarkably similar to the case under discussion. In *Sanders*, too, the defendant offered no evidence at the conclusion of the State's case, relying on certain evidence brought out on cross-examination which tended to exculpate the defendant and upon evidence of the State itself which tended to raise inferences favorable to the defendant. The Supreme Court stated:

> "[W]hen the court recapitulates fully the evidence of the State but fails to summarize, at all, evidence favorable to the defendant, he violates the clear mandate of the statute which requires the trial judge to state the evidence to the extent necessary to explain the application of the law thereto. In addition, he violates the requirement that equal stress be given to the State and to the defendant." [298 N.C. at 519, 259 S.E. 2d at 262.]

Thus, under the rule of *Sanders*, the trial judge gave both a prejudicially incomplete instruction on the law arising from the evidence, and failed to give equal stress to the contentions of the State and the defendant. Defendant is therefore entitled to a new trial.

[3] In a related assignment of error, the defendant asserts that the trial judge gave a prejudicially incomplete charge by instructing the jury to scrutinize the accomplices' testimony with care and caution, but failing to tell the jury to treat that evidence as they would any other evidence if they believed it, where the

testimony of the accomplices offered by the State was favorable to the defendant. We agree.

Once the trial judge undertakes to instruct on the credibility of an interested witness, he must do so accurately and completely. *State v. Eakins,* 292 N.C. 445, 447, 233 S.E. 2d 387, 388 (1977). When during jury instruction the trial court calls attention to a witness' status as interested and instructs the jury that such testimony must be scrutinized in light of that witness' interest, it is prejudicial error for the court to fail to give a qualifying instruction to the effect that, if after such scrutiny, the jury believed the testimony, it should be given the same weight as any other credible evidence. *State v. Kimmer,* 249 N.C. 290, 106 S.E. 2d 215 (1958); *State v. Davis,* 223 N.C. 57, 25 S.E. 2d 187 (1943); *State v. Holland,* 216 N.C. 610, 6 S.E. 2d 217 (1939).

The trial court gave the following instruction on accomplice testimony:

> "Now there was some evidence as I remember it, but you are to take our (sic) recollection of the evidence and not mine, but there was some evidence which tended to show that Cecil and Richard Dickens were possibly an accomplice in the commission of the crime charged in this case and I now instruct you ladies and gentlemen that an accomplice is an interested witness as a matter of law, therefore, you must with great care and caution scrutinize the testimony of Cecil or Richard Dickens, if you should find that they were accomplices in the trial."

It was error for the court to have omitted the qualifications immediately following, that if the jury believed such interested witnesses' testimony after regarding it with great care and caution, then they should give that testimony as much weight as they would a disinterested witness. *See State v. Holland, supra.*

Cecil and Richard Dickens, the alleged accomplices, gave testimony that was in some respects favorable to the defendant. The trial court's failure to give the qualifying instruction was prejudicial to the defendant and entitles defendant to a new trial.

The State argues that although the qualifying instruction was not given, the charge taken as a whole, conveyed the same meaning to the jury where the trial court followed the above

quoted instruction with a general instruction on witness credibility.

A similar argument was advanced in *State v. Davis, supra,* where the trial court gave the interested witness instruction as to both the defendant and the defendant's wife, but failed to give the qualifying instruction as to the wife's testimony.

The North Carolina Supreme Court rejected the State's contention that the qualifying words used in the charge as to the testimony of the defendant himself, likewise referred to the testimony of the defendant's wife.

> "The omission of any reference to the testimony of the defendant's witness (his wife) from the qualifying words applied to the testimony of the defendant himself may have been unintentional, an oversight, or even a 'lapsus linguae,' nevertheless, the omission is clearly apparent from the record . . . there must be a new trial."

*State v. Davis, supra* at 59, 25 S.E. 2d at 189.

Here too, the presence of the general instruction on witness credibility cannot be said to correct the potential prejudicial effect of the omission of the particular qualifying instruction that if the witnesses found to be interested are believed, then their evidence is to be treated as any disinterested witnesses' evidence. It is not to be left to the jury to determine this from the charge as a whole; rather, it is to be specifically stated by the trial judge in giving the interested witness instruction.

We have examined defendant's other assignments of error argued in defendant's brief and find them to be without merit.

New trial.

Judges VAUGHN and HILL concur.