STATE OF NORTH CAROLINA v. JESSE LEE THOMAS, Defendant

No. COA98-715

(Filed 17 August 1999)

**1. Constitutional Law— right to conduct own defense— standby counsel—pro se defendant—first-degree murder— defendant expressly requested**

The trial court did not err in a first-degree murder case by permitting pro se defendant's standby counsel to approach the bench while the jury was present in the courtroom and argue legal issues outside of the jury's hearing because: (1) nothing in the record indicates that defendant was in any way prevented from conducting his own defense as he saw fit; (2) standby counsel's participation in the trial occurred either when the jury was absent from the courtroom or at bench conferences outside of the jury's hearing; and (3) in all instances, defendant expressly requested the assistance of the standby counsel.

**2. Homicide— first-degree murder—sufficiency of evidence— intervening factor determined by jury**

The trial court did not err in denying defendant's motion to dismiss the first-degree murder charge based on insufficiency of the evidence since none of the eyewitnesses saw him inflict the fatal wound to the victim's heart, even though they saw him inflict other wounds to the victim, because the possibility of an intervening factor is a matter for the determination of the jury and is irrelevant to the issue before the court on a motion to dismiss.

**3. Criminal Law— leg shackles—pro se defendant—waiver— failed to object**

The trial court did not commit prejudicial error in a first-degree murder case by requiring pro se defendant to appear before the jury in leg shackles because defendant waived this argument when he made no objection to his having to proceed in shackles.

**4. Constitutional Law— right to be present at all stages—ex parte conference—harmless error—conference recreated—opportunity to be heard**

Although the trial judge erred in a first-degree murder case by holding an ex parte conference in his chambers with the prose-

STATE v. THOMAS

[134 N.C. App. 560 (1999)]

cutor and defendant's standby counsel, without defendant's presence, the error was harmless in light of the facts that: (1) the substance of the conference was recreated by the judge and there is not reason to question the accuracy or completeness of his recitation; and (2) the trial judge gave defendant ample opportunity to object and otherwise be heard on the issue discussed in the conference.

**5. Constitutional Law— right to counsel—right to be present—first-degree murder—pro se defendant—disruptive behavior—removal from courtroom—no jurors present**

The trial court did not violate defendant's right to be present and his right to counsel in a first-degree murder case when it momentarily removed pro se defendant from the courtroom for disruptive behavior during a break in jury selection when no prospective jurors were present in the courtroom and the trial court was attempting to enter findings into the record regarding various discovery issues raised by defendant because: (1) the trial court warned defendant that he would be removed if he kept interrupting the court; (2) defendant's standby counsel remained in the courtroom; and (3) defendant was present when the proceedings resumed and was given an opportunity to make his objections. N.C.G.S. § 15A-1032.

Appeal by defendant from judgment entered 10 December 1997 by Judge Cy A. Grant in Nash County Superior Court. Heard in the Court of Appeals 17 March 1999.

*Attorney General Michael F. Easley, by Assistant Attorney General John F. Maddrey, for the State.*

*Barnes, Braswell & Haithcock, P.A., by Glenn A. Barfield, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Defendant Jesse Lee Thomas appeals from a judgment entered upon his conviction of first-degree murder. For the reasons hereinafter articulated, we find that no prejudicial error occurred in the proceedings below and uphold defendant's conviction.

Pertinent factual and procedural background is as follows: Defendant was originally indicted for murder in the first degree of Debra Ann Proctor on 20 February 1989. In May of 1990, defendant

was tried capitally, convicted, and sentenced to death. Defendant appealed, and the North Carolina Supreme Court overturned the conviction and ordered a new trial. *See State v. Thomas*, 331 N.C. 671, 417 S.E.2d 473 (1992). On remand, in July of 1995, defendant was tried non-capitally, convicted of first-degree murder, and sentenced to a mandatory term of life imprisonment. Defendant appealed, and the Supreme Court again reversed defendant's conviction and awarded him a new trial. *See State v. Thomas*, 346 N.C. 135, 484 S.E.2d 368 (1997).

On 29 May 1997, defendant appeared before Judge Frank R. Brown and requested that he be permitted to proceed *pro se* and that standby counsel be appointed, pursuant to section 15A-1243 of the North Carolina General Statutes, to assist him in his defense. The judge conducted a hearing in accordance with section 15A-1242 of the General Statutes and entered an order concluding that defendant freely, voluntarily, and with full understanding of the charge against him and the potential punishment, waived his right to be represented by counsel. Judge Brown thereupon authorized defendant to appear and proceed *pro se* and appointed David C. Braswell to act as standby counsel.

On 31 July 1997, Judge G.K. Butterfield conducted a hearing to entertain certain pretrial motions. The first of such motions was a motion by defendant to "define the role of standby counsel." At the hearing, defendant and the State both took the position that the standby counsel could conduct any portion of the trial upon defendant's request, without such actions disqualifying defendant from further representing himself. Judge Butterfield did not issue a ruling on the motion at the pre-trial hearing, and, thus, the issue was again raised when the case came on for trial at the 1 December 1997 criminal session of Nash County Superior Court before Judge Cy A. Grant. Following lengthy arguments by the parties regarding their interpretations of the proper role of standby counsel, the court ruled as follows:

[I]n this particular case I'm going to take the position, Mr. Thomas and Mr. Braswell, that standby counsel will not be allowed to make any—not be allowed to make any statements—in front of the jury such as opening. . . . That as far as standby counsel is concerned, that the standby counsel will not make any statement in front of the jury. That is, standby counsel will not make a closing statement; standby counsel will not argue

any objections or motions in front of the jury; standby counsel will not conduct jury voir dire. As I stated, standby counsel will not make any statement in front of the jury.

All right, now, as it pertains to non-jury matters, for example, outside the presence of the jury at the request of Mr. Thomas if he sees fit, standby counsel may be allowed at Mr. Thomas' request to stand and argue questions of law with regard to, for example, positions on motions. . . .

So anything outside the presence of the jury, for example, Mr. Thomas, if a legal issue arises and you feel more confident having Mr.—wait a minute—having Mr. Braswell stand on your behalf if you see fit, you may ask him to do it in your behalf if you so desire. I'm not going to ask him to do it for you. That's going to be my position.

Defendant objected to the ruling, arguing that, at his request, the standby counsel should be permitted to address the jury or the court in the presence of the jury. The court noted the objection, and the case proceeded to jury selection.

During a recess in jury selection, the trial judge held an *ex parte* conference with the prosecutor and the standby counsel, outside of defendant's presence. The judge indicated for the record that the conference was held for the purpose of discussing the possibility of removing the shackles from defendant's legs. The judge further noted that in his opinion, defendant did not present any flight risk. Upon learning of the conference, however, defendant vigorously objected, asserting that it was improper for the court to hold such a conference in his absence. The court responded, stating, "in light of the fact that you object to those types of conversations, we'll keep the shackles on your feet." Defendant's legs remained in shackles until the evening recess of 4 December 1997, when the court ordered the restraints removed.

After opening statements by the parties, the State presented the following evidence: On the morning of 13 July 1978, defendant and a group of people were seated on the porch of a house located on South Church Street in Rocky Mount, North Carolina. Defendant's car was parked on the street in front of the house. Alphonso Taylor, one of the individuals gathered at the house, testified that he saw the victim, Debra Ann Proctor, walk by the house in the direction of Proctor's Grocery Store, which was situated on the corner of South Church and

Home Streets. As the victim passed the house, Taylor observed defendant rise from the porch, go to the trunk of his car, withdraw a long-bladed knife, slide the knife under his shirt, and walk toward the grocery store. Intending to purchase cigarettes, Taylor and several other men proceeded to the store with defendant. Taylor stated that after the victim entered the store, defendant waited on the side of the building. When the victim exited the store, defendant grabbed her from behind, stabbed her in the arm, yanked her head back by her hair, and "pulled the knife around her throat." Taylor explained that he did not see whether defendant inflicted any additional wounds to the victim, because when he realized defendant was going to kill her, he turned his head.

Blondie Hinton, who was nine months pregnant, also witnessed the stabbing while heading toward the store entrance. Hinton testified that she saw defendant walk down Church Street and duck behind a dumpster next to the grocery store. When the victim exited the store, defendant, making no attempt to conceal his identity, grabbed the victim by her hair, pulled her head back, and slit her throat with a knife that was approximately twelve inches long. Defendant then walked passed Hinton, threatened to "get" her if she told anyone what she saw, and walked up Church Street. Hinton said that she did not see defendant inflict any other stab wounds to the victim and that, immediately after the stabbing occurred, she went into labor.

The State also presented the testimony of the medical examiner, Dr. Dawson E. Scarborough, who performed the autopsy on the victim's body. Dr. Scarborough testified that the victim died from a stab wound to the heart. Dr. Scarborough further stated that the victim suffered a total of eleven stab wounds and that the laceration to her neck was not fatal.

Defendant offered no evidence in his defense. At the close of all the evidence, defendant, through his standby counsel, moved to dismiss the charge based on insufficiency of the evidence. The trial court denied the motion, and the jury returned a verdict finding defendant guilty of murder in the first degree. The trial court sentenced defendant to a term of life imprisonment. Defendant appeals.

---

**[1]** By his first assignment of error, defendant argues that representation *in propia persona* with the assistance of standby counsel,

such as he received in the instant case, constitutes "hybrid" representation, which is prohibited in North Carolina. Defendant contends that by permitting the standby counsel to approach the bench while the jury was present in the courtroom and argue legal issues outside of the jury's hearing, the trial court committed reversible error. We must disagree.

Regarding his representation, "a defendant has only two choices—'to appear in *propria persona* or, in the alternative, by counsel.' " *Thomas*, 331 N.C. at 677, 417 S.E.2d at 477 (quoting *State v. Parton*, 303 N.C. 55, 61, 277 S.E.2d 410, 415 (1981), *disavowed on other grounds by State v. Freeman*, 314 N.C. 432, 333 S.E.2d 743 (1985)). A defendant is not entitled to "hybrid" representation, i.e., to appear both *pro se* and by counsel. *Id.* This notwithstanding, section 15A-1243 of our General Statutes authorizes the trial court to provide standby counsel for a defendant appearing *pro se*:

> When a defendant has elected to proceed without the assistance of counsel, the trial judge in his discretion may appoint standby counsel to assist the defendant when called upon and to bring to the judge's attention matters favorable to the defendant upon which the judge should rule upon his own motion.

N.C. Gen. Stat. § 15A-1243 (1997).

Although our research has uncovered no North Carolina cases that speak directly to the situation presented by these facts, the United States Supreme Court, in *McKaskle v. Wiggins*, 465 U.S. 168, 79 L. Ed. 2d 122 (1984), addressed the question of what role standby counsel is permitted to play in a proceeding where the defendant is appearing *pro se*. In that case, the Court stated that a defendant's right to conduct his own defense requires that he "be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial." *Id.* at 174, 79 L. Ed. 2d at 131. Regarding standby counsel's participation in the proceedings, the Court held as follows:

> Participation by counsel with a *pro se* defendant's express approval is, of course, constitutionally unobjectionable. A defendant's invitation to counsel to participate in the trial obliterates any claim that the participation in question deprived the defendant of control over his own defense. Such participation also diminishes any general claim that counsel unreasonably

**STATE v. THOMAS**

[134 N.C. App. 560 (1999)]

interfered with the defendant's right to appear in the status of one defending himself.

*Id.* at 182, 79 L. Ed. 2d at 136.

The record reveals that defendant, in the instant case, was permitted to examine jurors and exercise challenges, make an opening statement, cross-examine witnesses, make objections and arguments on legal issues, and make a closing argument. Nothing in the record indicates that defendant was in any way prevented from conducting his own defense as he saw fit. As to the standby counsel's participation in the trial, the record shows that such involvement occurred either when the jury was absent from the courtroom or at bench conferences outside of the jury's hearing. Of primary importance, however, is that in all instances, defendant expressly requested the assistance of the standby counsel.

> THE COURT: One thing for the record. I've been noticing every time we've had bench conferences that standby counsel, Mr. Braswell, also approaches the bench. Is he approaching the bench at your request, Mr. Thomas? I just want to get that in the record. Yes or no?
>
> MR. THOMAS: Yes, Your Honor.
>
> THE COURT: Very well.
>
> MR. THOMAS: I requested it.

Insofar as the standby counsel participated only "when called upon" by defendant and in a manner that was not at odds with defendant's right to conduct his own defense, *see* N.C.G.S. § 15A-1243, we hold that the trial court did not err in permitting such participation. Thus, defendant's assignment of error proves unsuccessful.

[2] Next, we examine defendant's assignment of error wherein he argues that the trial court erroneously denied his motion to dismiss the charge of first-degree murder for insufficiency of the evidence. Defendant asserts that the State's evidence was insufficient to show that he inflicted the fatal stab wound to the victim's heart. We are not persuaded.

"Before the issue of a defendant's guilt may be submitted to the jury, the trial court must be satisfied that substantial evidence has been introduced tending to prove each essential element of the offense charged and that the defendant was the perpetrator." *State v.*

*Hamlet,* 312 N.C. 162, 169, 321 S.E.2d 837, 842 (1984). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Pryor,* 59 N.C. App. 1, 5, 295 S.E.2d 610, 614 (1982). Thus, evidence necessary to support a conviction is that which "is sufficient for a rational trier of fact to find proof beyond a reasonable doubt of every essential element of the crime charged." *Id.* at 5, 295 S.E.2d at 613. However, while substantial evidence must be real and existing, it "need not exclude every reasonable hypothesis of innocence." *Hamlet,* 312 N.C. at 169, 321 S.E.2d at 842. Any contradictions or discrepancies in the evidence are for the jury to resolve, and these inconsistencies, by themselves, do not serve as grounds for dismissal. *Id.*

"First-degree murder is the unlawful killing of a human being with malice, premeditation, and deliberation." *State v. Truesdale,* 340 N.C. 229, 234, 456 S.E.2d 299, 302 (1995). Premeditation means that at some point and for some length of time before committing the murderous act, the defendant formulated the specific intent to kill the victim. *Id.* "Deliberation means an intent to kill carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." *State v. Williams,* 319 N.C. 73, 80, 352 S.E.2d 428, 433 (1987). "A person is criminally responsible for a homicide only if his act caused or directly contributed to the death." *State v. Luther,* 285 N.C. 570, 573, 206 S.E.2d 238, 240 (1974).

The evidence, when taken in the light most favorable to the State, tends to show that after the victim walked passed the house where defendant and other individuals were congregated, defendant retrieved a long-bladed knife from the trunk of his car and followed the victim to the grocery store. Defendant then hid behind a dumpster in the store parking lot and laid in wait until the victim exited the store. When she did, defendant grabbed her from behind, stabbed her in or near her arm, pulled her head back by her hair, and cut her throat.

This evidence notwithstanding, defendant contends that because neither of the eyewitnesses saw him inflict the fatal wound to the heart, there was insufficient evidence to prove that he caused or contributed to the victim's death. This argument is seemingly premised on the unlikely possibility that another person intervened and mortally wounded the victim between the time when defendant stabbed her and the time of death. "However, the possibility of such

**STATE v. THOMAS**

[134 N.C. App. 560 (1999)]

an intervening factor is a matter for the determination of the jury and is irrelevant to the issue before the court on a motion to dismiss as in nonsuit." *State v. Cheek*, 31 N.C. App. 379, 382-83, 229 S.E.2d 227, 229 (1976). Accordingly, it is our judgment that the State offered ample evidence of defendant's guilt to submit the crime of first-degree murder to the jury. The trial court was, therefore, correct in denying defendant's motion to dismiss, and this assignment of error fails.

**[3]** We now turn to defendant's contention in his next assignment of error that the trial court impermissibly allowed and required him to appear before the jury in leg shackles. Defendant argues that in so doing, the court undermined the presumption of innocence to which all criminal defendants are entitled in the minds of the jurors. We are of the opinion, however, that defendant has waived this argument.

*State v. Tolley*, 290 N.C. 349, 226 S.E.2d 353 (1976), is the seminal case on the subject of whether and under what circumstances a criminal defendant may be required to appear before the jury in shackles. In *Tolley*, Justice Huskins, writing for the Supreme Court, stated that as a general rule, "a defendant in a criminal case is entitled to appear at trial free from all bonds or shackles except in extraordinary instances." *Id.* at 365, 226 S.E.2d at 366. However, not every case wherein the defendant is made to wear shackles will be deemed to be fundamentally unfair. *Id.* at 367, 226 S.E.2d at 367. Under section 15A-1031 of the General Statutes, a trial judge may require a defendant to be physically restrained, "when the judge finds the restraint to be reasonably necessary to maintain order, prevent the defendant's escape, or provide for the safety of persons. N.C. Gen. Stat. § 15A-1031 (1997). "The propriety of physical restraints depends upon the particular facts of each case, and the test on appeal is whether, under all of the circumstances, the trial court abused its discretion." *Toley*, 290 N. C. at 369, 226 S.E.2d at 369. Nevertheless, "failure to object to the shackling, . . . waive[s] any error which may have been committed." *Id.*, 290 N.C. at 369, 226 S.E.2d at 370.

The record in the present case reveals no mention of defendant's shackled condition until the proceedings had progressed well into the jury voir dire. During a recess in the selection process, the trial judge summoned the district attorney and defendant's standby counsel into his chambers to discuss removing defendant's restraints before the actual trial began. This conference was held in defendant's absence, and in the course of the discussion, the court determined

**STATE v. THOMAS**

[134 N.C. App. 560 (1999)]

that defendant did not present a flight risk. However, when the conference was brought to defendant's attention, the following exchange occurred:

MR. THOMAS: Object. Object. Objection, Your Honor.

THE COURT: All right.

MR. THOMAS: . . . I object to His Honor calling my standby counsel from the table into chambers, calling the district attorney from his table into chambers and discussing myself and my proceedings.

THE COURT: Certainly. And I'll tell you what we discussed.

MR. THOMAS: I object.

THE COURT: That's fine. I understand. Overruled.

MR. THOMAS: Your Honor, I was supposed to have been there. You are supposed to have called me in those proceedings.

THE COURT: Certainly. Certainly. Right.

MR. THOMAS: My name is not supposed to be mentioned, you're not to hold no proceedings out of my presence. I object to being excluded from those proceedings.

THE COURT: Your objection is on the record.

MR. THOMAS: I object to being excluded from those proceedings.

THE COURT: I understand.

MR. THOMAS: I was supposed to been with those proceedings.

THE COURT: How many times do you need to say it?

MR. THOMAS: Thank you, sir.

. . .

THE COURT: [Recreates the discussion for the record.] [A]nd the agreement that we came to was we thought it would be okay, that you wouldn't present a problem as a run risk. But in light of the fact that you object to those types of conversations, we'll keep the shackles on your feet. . . .

MR. THOMAS: I object to those proceedings, Your Honor.

THE COURT: Fine.

MR. THOMAS: And I wanted to discuss it with you. It was unconstitutional for you to discuss those issues with my standby counsel. Those are what I wanted to discuss with you, those procedures, those issues, about me being in shackles.

Thank you very much for another new trial. Thank you very much for another new trial.

From this transcript of the dialog between defendant and the trial judge, it is clear that defendant objected to the conference being held in his absence. It is likewise clear that defendant made no objection to his having to proceed in shackles. Therefore, any error as to the shackling has been waived.

Even had this issue been properly preserved, we are convinced that no prejudice to defendant has occurred. As shown above, the State offered overwhelming evidence of malice, premeditation, and deliberation to support the first-degree murder conviction. Based on the record, we conclude that the jury would not likely have reached a different verdict if defendant had not been made to appear before the jury in shackles. Since new trials are warranted only where an error was prejudicial, *State v. Wright*, 82 N.C. App. 450, 346 S.E.2d 510 (1986), and since it is apparent from the record that any error the court may have committed regarding the shackles "was harmless beyond a reasonable doubt," N.C. Gen. Stat. § 15A-1443(b) (1997), this assignment of error is overruled.

**[4]** Defendant next assigns error to the *ex parte* conference between the trial judge, the prosecutor, and defendant's standby counsel. Specifically, defendant argues that this conference violated his right to be present at all stages of the trial and his right to counsel. Though the trial court's action was error, we hold that the error was harmless beyond a reasonable doubt.

"Article I, section 23 of the North Carolina Constitution guarantees a criminal defendant the right to be present at every stage of his trial." *State v. Brogden*, 329 N.C. 534, 541, 407 S.E.2d 158, 163 (1991). The same right is afforded to a defendant by the Sixth Amendment to the United States Constitution. *State v. Payne*, 320 N.C. 138, 357 S.E.2d 612 (1987). "This right to be present extends to all times during the trial when anything is said or done which materially affects defendant as to the charge against him." *State v. Chapman*, 342 N.C. 330, 337-38, 464 S.E.2d 661, 665 (1995). However, under section 15A-1443(b) of our General Statutes, constitutional error is subject to

a harmless error analysis. *State v. Colbert*, 311 N.C. 283, 286, 316 S.E.2d 79, 81 (1984). A defendant's conviction will not be reversed on appeal where the State shows that the error was harmless beyond a reasonable doubt. *Brogden*, 329 N.C. 534, 407 S.E.2d 158.

Assuming *arguendo* that the conversation at issue constituted a "stage" in the proceeding as that term has been construed in our jurisprudence regarding a defendant's right to be present, we hold that the error in excluding defendant was harmless beyond a reasonable doubt. Here, the transcript of the record reveals that the substance of the conference was recreated by the judge, and we have no reason to question the accuracy or completeness of the judge's recitation. Furthermore, the trial judge gave defendant ample opportunity to object and otherwise be heard on the issue discussed in the conference. Given these circumstances, we cannot conclude that a different verdict would likely have been reached had defendant been present at the conference; therefore, this argument fails.

As to defendant's contention that his absence from the conference infringed upon his Sixth Amendment right to counsel, we acknowledge that the right to counsel "is one of the most closely guarded of all trial rights" and that it extends to all stages of the proceeding. *Colbert*, 311 N.C. at 285, 316 S.E.2d at 80. However, for the reasons discussed in the preceding paragraph, we hold that any error pertaining to defendant's right to counsel was harmless beyond a reasonable doubt. Defendant's assignment of error is denied.

[5] With his next assignment of error, defendant challenges his momentary removal from the courtroom for disruptive behavior as violative of his right to be present and his right to counsel. From our review of the record, we find no error in the court's decision.

Section 15A-1032 of the General Statutes, which governs the removal of a disruptive defendant, provides as follows:

(a) A trial judge, after warning a defendant whose conduct is disrupting his trial, may order the defendant removed from the trial if he continues conduct which is so disruptive that the trial cannot proceed in an orderly manner. When practicable, the judge's warning and order for removal must be issued out of the presence of the jury.

(b) If the judge orders a defendant removed from the courtroom, he must:

(1) Enter in the record the reasons for his action; and

(2) Instruct the jurors that the removal is not to be considered in weighing evidence or determining the issue of guilt.

A defendant removed from the courtroom must be given the opportunity of learning of the trial proceedings through his counsel at reasonable intervals as directed by the court and must be given opportunity to return to the courtroom during the trial upon assurance of his good behavior.

N.C. Gen. Stat. § 15A-1032 (1997).

During a break in jury selection, when no prospective jurors were present in the courtroom, the judge attempted to enter findings into the record regarding various discovery issues raised by defendant. In the course of the court's dictation, however, defendant relentlessly interrupted, and the court noted its frustration.

THE COURT: Let the record reflect that the court is attempting to make some findings or make an observation for the record and the defendant continually interrupts the court, and I think this is to your prejudice and I would make sure this is a part of the file so that the Supreme Court can review this, that as the court is attempting to make a comment into the court (sic) with regard to discovery, the defendant continually stands up and interrupts the court.

When defendant continued to interrupt, the court warned him that if he persisted, he would be removed.

THE COURT: If the defendant makes another comment while I am trying to rule or make an observation, I'm going to ask that the defendant be removed from the courtroom, and I will have to make my observation or make my statement into the record outside of the presence of the defendant simply because I'm trying to make this and he continues to interrupt me.

Defendant again interrupted the court and was removed.

THE COURT: All right. Let the record reflect that the defendant was removed from the courtroom because as I warned him, he continually interrupted me as I was trying to speak into the record.

Also let the record reflect that standby counsel is present in the courtroom as well as the prosecutor.

The court then entered his findings into the record and declared a recess until the afternoon. Defendant was present when the proceedings resumed and was given an opportunity to make his objections. In light of these facts, we are satisfied that the court complied with the requirements of section 15A-1032, and we hold that the court's decision to remove defendant from the courtroom was without error.

In sum, after careful consideration of the entire record, we conclude that defendant has been afforded a fair trial, free from prejudicial error.

No error.

Judges MARTIN and HUNTER concur.