IN THE MATTER OF: Joseph D. Lineberry

No. COA02-113

(Filed 3 December 2002)

**1. Appeal and Error— preservation of issues—juvenile delinquency—sufficiency of evidence—no motion to dismiss**

A juvenile waived his right to challenge on appeal the sufficiency of the evidence against him by failing to move to dismiss the petition at the close of evidence during the adjudicatory hearing.

**2. Juveniles— hearing—interruption of counsel—no bias**

A trial judge did not exhibit improper bias in a juvenile delinquency hearing by interrupting counsel where the interruptions were inconsequential and revealed no predisposition toward either party.

**3. Constitutional Law— right to be present at trial—juvenile disposition—chambers conference call**

Although it was error to exclude a juvenile from a chambers conference call with a doctor who prepared an evaluation of the juvenile, the error was harmless beyond a reasonable doubt because the call occurred in the presence of the juvenile's counsel, who cross-examined the witness; the substance of the call was placed on the record by the judge; the doctor's opinion was reduced to writing and was available to all parties; and the juvenile made no objections to his absence from the conference.

**4. Constitutional Law— self-incrimination—juvenile's refusal to admit guilt—custody pending appeal**

A juvenile's constitutional right against self-incrimination was violated where the court found that the juvenile's consistent refusal to admit to the offenses diminished his amenability to treatment and ordered that he remain in custody pending appeal.

**5. Juveniles— transcript of juvenile hearing—imperfect**

The transcript of a juvenile proceeding, while imperfect, was not so inaccurate as to prevent meaningful review.

Appeal by juvenile from orders entered 12 January 2001 and 29 June 2001 by Judge Charlie E. Brown in Rowan County District Court. Heard in the Court of Appeals 10 October 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Kathleen U. Baldwin, for the State.*

*Richard E. Jester for juvenile appellant.*

TIMMONS-GOODSON, Judge.

Joseph D. Lineberry ("juvenile") appeals from orders of the trial court adjudicating juvenile to be delinquent and placing the custody of juvenile with the Youth Development Center. For the reasons stated herein, we affirm the order of the trial court adjudicating juvenile delinquent, but we vacate the order continuing custody of juvenile pending appeal, and we remand for proceedings consistent with this opinion.

The pertinent facts of this appeal are as follows: On 6 June 2000, the State filed two petitions seeking delinquency status for juvenile with the Rowan County District Court. The petitions accused juvenile of committing a sexual offense in the second degree and of taking indecent liberties with a fellow minor.

The matter came before the trial court on 23 June 2000, at which time the State presented evidence tending to show the following: On 5 February 2000, juvenile's ten-year-old cousin, "B," spent the night at juvenile's residence. Juvenile was fourteen years old at the time. "B" testified that, after he had gone to sleep in juvenile's bedroom, juvenile removed "B's" clothing, placed duct tape over his mouth, held him down on the bed, and "put his privates . . . in [B's] butt." "B" affirmed that juvenile's actions were painful, but that he was unable

IN RE LINEBERRY

[154 N.C. App. 246 (2002)]

to scream due to the duct tape over his mouth. "B" stated that he was approximately four feet, five inches tall at the time and weighed eighty-five pounds. Juvenile testified that he was six feet, two inches tall and weighed approximately one hundred and ninety pounds. According to "B," juvenile warned him that "if [he] told anybody he'd hurt me." Despite the warning, "B" attempted to inform his aunt, juvenile's mother, of the assault immediately following his encounter with juvenile. "B" stated that he approached his aunt in the living room, where she was watching television, but that before he could tell her what had happened, she ordered him to "get back in the room." "B" returned to juvenile's room and went to sleep.

When "B" returned home the following day, he spoke of juvenile's actions with his brother, who immediately informed "B's" mother. "B" described his encounter with juvenile to his mother, who then took him to the hospital. "B's" mother testified that the examining physician found redness around "B's" anus, but no other physical manifestations of the assault.

Juvenile testified at the hearing and denied touching "B" in any type of sexual or otherwise improper manner. Juvenile's mother, Debbie Lineberry, also testified that she heard no unusual noises on the evening in question, and noted that there was no duct tape in the house.

At the conclusion of the evidence, the trial court found that juvenile had committed a second-degree sexual offense and had taken indecent liberties with a child. The trial court delayed disposition of the matter pending completion of a sex offender evaluation. On 8 December 2000, the trial court held a hearing concerning the evaluation of juvenile and entered an order adjudicating juvenile delinquent on 12 January 2001. The disposition order required juvenile to cooperate with an intensive nonresidential treatment program for sex offenders.

On 25 May 2001, the trial court held a hearing upon a motion for review based on evidence that juvenile was not attending the required outpatient therapy. On 31 May 2001, the trial court entered a disposition and commitment order, committing juvenile to the custody of the Youth Development Center in order to complete a sex offender treatment program. On 7 June 2001, the trial court convened to address the presumption that a juvenile be released from secure custody pending appeal. After hearing the evidence presented, the court concluded that it was in the best interests of juvenile and the

State that juvenile remain in custody pending appeal. Juvenile appeals from these orders.

---

Juvenile presents five issues on appeal, arguing that the trial court erred by (1) finding juvenile to be delinquent; (2) displaying improper bias towards juvenile; (3) receiving testimony of a witness *ex parte*; and (4) committing juvenile to the Youth Development Center pending appeal. Juvenile also contends that (5) the procedures for the recordation of trial testimony and proceedings in the juvenile court were inadequate to protect juvenile's constitutional and statutory rights.

[1] By his first assignment of error, juvenile contends that the State failed to present sufficient evidence of juvenile's delinquency, and that the trial court erred in finding otherwise. Juvenile made no motion, however, to dismiss the petition at the close of the evidence during the adjudicatory hearing. As such, he has waived his right on appeal to challenge the sufficiency of the evidence against him. *See* N.C.R. App. P. 10(b)(3) (2002); *In re Clapp*, 137 N.C. App. 14, 19, 526 S.E.2d 689, 693 (2000) (holding that, as the juvenile charged with delinquency on the grounds of committing a second-degree sexual offense failed to move for dismissal at the close of the evidence against him, he was precluded from challenging the sufficiency of the evidence on appeal). We therefore dismiss this assignment of error.

[2] By his second assignment of error, juvenile submits that the trial judge demonstrated improper bias towards juvenile during the adjudicatory hearing. Specifically, juvenile contends that the trial judge displayed bias by interrupting juvenile's counsel six times during his closing argument. Juvenile asserts that the comments made by the trial judge during these interruptions revealed the judge's lack of impartiality. We disagree.

We note first that juvenile made no motion for the trial judge's recusal based on allegations of bias. Further, where a party moves for recusal, the burden is on the movant to " 'demonstrate objectively that grounds for disqualification actually exist. Such a showing must consist of substantial evidence that there exists such a personal bias, prejudice or interest on the part of the judge that he would be unable to rule impartially.' " *State v. Fie*, 320 N.C. 626, 627, 359 S.E.2d 774, 775 (1987) (quoting *State v. Fie*, 80 N.C. App. 577, 584, 343 S.E.2d 248, 254 (1986) (Martin, J., concurring)).

IN RE LINEBERRY

[154 N.C. App. 246 (2002)]

We discern no improper bias by the trial judge in the instant case. The interruptions of the closing argument by the trial judge were inconsequential and reveal no predisposition by the judge towards either party. For example, when counsel for juvenile stated that he "hope[d] I don't irritate the Court or bore you with bringing out these things" the judge assured counsel that "You're not boring me[.]" In another example, counsel for juvenile stated that, "More than two weeks before Ms. Rushner asked to talk to him, passed[,]" at which point the judge correctly noted that the time period had in fact been ten days. Further, when counsel for juvenile stated that he "underst[ood] that the Court wishes to give credence to a victim that comes in and says this happened[,]" the judge assured counsel that, "I'm not here to give credence to anybody in particular. I'm here to weigh the credibility of the witnesses and the evidence." We fail to perceive how the trial court's direct affirmation that it was impartial could form the basis of a claim of partiality.

In another incident, counsel for juvenile argued that "B's" account of events was not credible, in that he did not immediately inform Mrs. Lineberry of juvenile's assault. Specifically, counsel called "B's" testimony into doubt by stating, "something like this has just occurred to him, that he did not go to the woman he had no reason to think would do anything but be his friend [,]" at which point the trial judge interrupted with the observation that Mrs. Lineberry was "[t]he perpetrator's mother."

In the context of the transcript, it is clear that the trial court characterized Mrs. Lineberry as "the perpetrator's mother" in order to direct counsel's attention to valid reasons for "B's" reluctance to confide in Mrs. Lineberry. Rather than exposing bias towards juvenile, the trial court's statement allowed counsel to refine his closing argument to the trial court by focusing more narrowly on "B's" credibility. The trial court's description of Mrs. Lineberry as "the perpetrator's mother" for identification purposes does not indicate that the trial court believed that juvenile committed the offense any more than defense counsel's identification of "B" as "the victim" indicates defense counsel's belief that "B" was in fact assaulted. Further interruptions by the trial court were similarly minor in nature and of no import. We therefore overrule juvenile's second assignment of error.

[3] In his third assignment of error, juvenile asserts that the trial court violated his rights by receiving witness testimony outside of

juvenile's presence. Under Article 1, section 23 of the North Carolina Constitution, a criminal defendant has the right to be present at every stage of his trial. *See State v. Thomas*, 134 N.C. App. 560, 570, 518 S.E.2d 222, 229, *appeal dismissed and disc. review denied*, 351 N.C. 119, 541 S.E.2d 468 (1999). "Juveniles in delinquency proceedings are entitled to constitutional safeguards similar to those afforded adult criminal defendants." *See In re Arthur*, 27 N.C. App. 227, 229, 218 S.E.2d 869, 871 (1975), *reversed on other grounds*, 291 N.C. 640, 231 S.E.2d 614 (1977). Constitutional error will not form the basis of reversal on appeal, however, where it is shown that such error was harmless beyond a reasonable doubt. *See* N.C. Gen. Stat. § 15A-1443(b) (2001); *State v. Brogden*, 329 N.C. 534, 541, 407 S.E.2d 158, 163 (1991).

During the 8 December 2000 hearing in the instant case, the trial court ordered the record to reflect

> that there was a chambers conference that involved a conference call with Dr. Cappaletti . . . who prepared the court-ordered evaluation; that [counsel for juvenile] and the [district attorney], as well as the court counselors, had an opportunity to question Dr. Cappaletti about her evaluation about the alternatives to therapy available in lieu of training school for [juvenile]. And, in fact, we further briefed Dr. Cappaletti about the competing privately-obtained evaluation, and [counsel for juvenile] fleshed that out with Dr. Cappaletti to a degree.

Counsel for juvenile confirmed that the conference call was made in his presence and with juvenile's knowledge and consent, stating that

> for the record, [juvenile] knew when I started the chambers discussion and we started to handle the method in the discussion rather the confrontational manner that that was something we wanted to do as a way of facilitating the open discussion rather than the formal, confrontational type things that could otherwise be required. And we do appreciate the opportunity to handle the matter in that way. Thank you.

Dr. Cappaletti also submitted a written evaluation of juvenile to the court, which was available for all parties and is included in the record on appeal.

Although juvenile was not present during Dr. Cappaletti's testimony, we hold that the error in excluding juvenile was harmless

beyond a reasonable doubt. *See Thomas*, 134 N.C. App. at 571, 518 S.E.2d at 230. The conference call occurred in the presence of juvenile's counsel, who cross-examined the witness regarding her testimony. The substance of the conference call was placed on the record by the trial judge. Dr. Cappaletti's opinion regarding the matter was reduced to writing and available to all parties. Moreover, juvenile made no objections to his absence from the conference; on the contrary, counsel for juvenile thanked the trial judge for allowing the admission of evidence in an informal setting. In light of these circumstances, we cannot conclude that juvenile's exclusion from the proceedings had any impact on the outcome of the disposition. *See State v. Huff*, 325 N.C. 1, 35, 381 S.E.2d 635, 654 (1989), *vacated and remanded on other grounds*, 497 U.S. 1021, 111 L. Ed. 2d 777 (1990); *Thomas*, 134 N.C. App. at 571, 518 S.E.2d at 230. We therefore overrule this assignment of error.

[4] Juvenile next contends that the trial court erred in ordering juvenile to remain in custody during the pendency of his appeal. Under section 7B-2605 of the North Carolina General Statutes,

> [p]ending disposition of an appeal, the release of the juvenile, with or without conditions, should issue in every case unless the court orders otherwise. For compelling reasons which must be stated in writing, the court may enter a temporary order affecting the custody or placement of the juvenile as the court finds to be in the best interests of the juvenile or the State.

N.C. Gen. Stat. § 7B-2605 (2001). In the instant case, the trial court held a hearing on the issue of juvenile's release from custody pending appeal and found the following pertinent facts:

> 3. The date of adjudication of felonious Second Degree Sex Offense and misdemeanor Indecent Liberties Between Minors was June 23, 2000;
>
> 4. Upon request of the juvenile's first trial counsel, Ron Bowers; continuance was granted thereby delaying entry of a dispositional order;
>
> 5. Three sex offender evaluations, attached and incorporated herein by reference, were received and considered;
>
> 6. The juvenile has consistently expressed entrenched denial which diminishes his amenability to treatment;

7. To date the juvenile has not participated in any sex offender therapy;

. . . .

9. The felonious Second Degree Sex Offense and misdemeanor Indecent Liberties Between Minors was committed in an aggressive, premeditated manner;

10. The juvenile is frequently in the presence of other juveniles that have not been made aware of his adjudication for a sex offense;

11. The juvenile has not been consistently closely supervised by his parents or other adults that have been made aware of the risks for re-offending; and,

12. The juvenile is currently receiving sex offender specific treatment at the Swannanoa Valley Youth Development Center Juvenile Evaluation Center.

Based on these facts, the trial court concluded that "[c]ompelling reasons exist and it is in the best interest of the juvenile and the State that the juvenile remain in the custody of the Youth Development Center pending appeal."

Juvenile objects to Finding Number Six by the trial court, in which the court found that juvenile "consistently expressed entrenched denial which diminishes his amenability to treatment[.]" Juvenile contends that this finding indicates that the trial court denied juvenile's release because of his refusal to admit that he committed the offenses for which he was adjudicated delinquent. We agree with juvenile that this finding was improper.

Under the Fifth Amendment to the United States Constitution, no person "shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. Similarly, Article I, section 23, of the North Carolina Constitution protects "every person charged with crime" from being "compelled to give self-incriminating evidence[.]" N.C. Const. art. I, § 23. The privilege against self-incrimination extends to juveniles charged with delinquency. See N.C. Gen. Stat. § 7B-2405(4) (2001); Arthur, 27 N.C. App. at 229, 218 S.E.2d at 871. The constitutional guarantees against self-incrimination should be liberally construed, see State v. Smith, 13 N.C. App. 46, 51, 184 S.E.2d 906, 909 (1971), and apply alike to civil and criminal proceedings, " 'wherever the answer might tend to subject to criminal respon-

sibility him who gives it.' " *Trust Co. v. Grainger*, 42 N.C. App. 337, 339, 256 S.E.2d 500, 502 (quoting *McCarthy v. Arndstein*, 266 U.S. 34, 40, 69 L. Ed. 158, 161 (1924)), *disc. review denied*, 298 N.C. 304, 259 S.E.2d 300 (1979).

A "classic penalty situation" regarding the privilege against self-incrimination arises where the State, either expressly or by implication, asserts that invocation of the privilege will lead to revocation of probation. *See Minnesota v. Murphy*, 465 U.S. 420, 435, 79 L. Ed. 2d 409, 424 (1984). Various courts have applied the United States Supreme Court's holding in *Murphy* in the context of treatment programs for offenders. Such court-ordered treatment programs may implicate the "classic penalty situation," in that the therapeutic programs often require a convicted offender to admit to the offense for which he was found guilty. *See, e.g., Mace v. Amestoy*, 765 F. Supp. 847, 851 (D.Vt. 1991) (holding that the defendant's Fifth Amendment rights were violated where his probation was revoked based on his failure to complete a sexual treatment program that required incriminating admissions); *State v. Fuller*, 276 Mont. 155, 166-67, 915 P.2d 809, 816 (holding that the defendant was placed in the classic penalty situation when he was ordered, as a condition of his probation, to participate in a sexual offenders treatment program that required participants to disclose their offense history), *cert. denied*, 519 U.S. 930, 136 L. Ed. 2d 219 (1996); *State v. Evans*, 144 Ohio App. 3d 539, 550, 760 N.E.2d 909, 918 (holding that the classic penalty situation existed where the delinquent juvenile made incriminating statements during court-ordered therapy at a residential treatment center for drug offenders), *appeal dismissed*, 93 Ohio St.3d 1473, 757 N.E.2d 771 (2001). Courts have recognized that

> [t]he dramatic expansion of therapeutic sentencing alternatives has disturbing implications for the Fifth Amendment rights of convicted offenders, because cooperation of the patient is a prerequisite to successful therapy. Sex offenders . . . often deny both the commission of an offense and the inappropriateness of their actions. The first step toward rehabilitation, however, is to admit that there is a problem. In criminal law, this translates into an admission of guilt, raising the question of whether the requirement of most therapy programs that a defendant accept responsibility for his actions violates the Fifth Amendment protection against self-incrimination.

Jessica Wilen Berg, Note, *Give Me Liberty or Give Me Silence: Taking a Stand on Fifth Amendment Implications for Court-*

*Ordered Therapy Programs*, 79 Cornell L. Rev. 700, 702 (1994) (foot-notes omitted).

In the instant case, the court ordered that juvenile undergo a sex offender evaluation, three of which were performed and submitted to the court. The court also ordered juvenile to be placed in the custody of the Youth Development Center and specifically ordered "that he attend and complete the Sex Offender Sex Treatment Program." At the hearing to determine whether juvenile should remain in custody pending his appeal, the juvenile court counselor assigned to juvenile's case testified that, if juvenile continued to deny the offense while undergoing treatment, "that will slow his progression through the treatment program." The counselor further verified that juvenile's "commitment time is connected directly to his—whether or not he will admit to the crime." After reviewing the evidence, the court found that juvenile's consistent refusal to admit to the offenses "diminishes his amenability to treatment" and ordered that juvenile remain in custody pending appeal. This finding was error.

In finding that juvenile's refusal to admit to the offenses was a factor justifying his continued custody pending appeal, the trial court exposed juvenile to the classic penalty situation of choosing between the privilege against self-incrimination and prolonged confinement. *See Murphy*, 465 U.S. at 435, 79 L. Ed. 2d at 424. Juvenile has consistently maintained his innocence as to the offenses for which he was adjudicated delinquent, and which he is currently appealing. Thus, the trial court's conclusion that juvenile should remain in custody pending appeal based on juvenile's refusal to admit to the offense for which he was adjudicated delinquent violated juvenile's constitutional right against self-incrimination.

We note that the fact that juvenile denied the offenses for which he was adjudicated delinquent was but one of several reasons for the trial court's decision. The trial court made other findings of fact to support its conclusion that continued custody was in the best interests of the juvenile and of the State. Specifically, the trial court found that juvenile posed a risk to others, in that he had been adjudicated delinquent for offenses that often present a high rate for re-offense, and for which juvenile had received no therapy. *See, e.g., McKune v. Lile*, 536 U.S. 24, 33-34, 153 L. Ed. 2d 47, 56-57 (2002) (noting that therapy for sexual offenders is particularly important, as sexual offenders are "much more likely than any other type of offender" to commit a further sexual offense upon release from custody).

Moreover, the offenses were committed "in an aggressive, premeditated manner." Despite the fact that juvenile was often "in the presence of other juveniles" who were unaware of juvenile's adjudication, juvenile was not closely supervised by his parents. Because of the potential threat that juvenile posed to others, the trial court concluded that custody was in the best interests of the State.

Although the trial court made appropriate findings to support its decision, we are unable to determine from the record before us the weight given by the trial court to the erroneous finding concerning juvenile's refusal to admit to his guilt. *Compare State v. Canaday*, 330 N.C. 398, 399, 410 S.E.2d 875, 876 (1991); *State v. Clifton*, 125 N.C. App. 471, 483, 481 S.E.2d 393, 401 (1997) (both adhering to the general rule that, under the Fair Sentencing Act, a defendant is entitled to a new sentencing hearing where the trial court errs in finding an aggravating factor). We therefore vacate the order continuing juvenile's custody pending appeal and remand the case to the trial court for proceedings not inconsistent with this opinion. *See In re Bullabough*, 89 N.C. App. 171, 184, 365 S.E.2d 642, 649 (1988) (holding that the trial court erred in ordering juvenile to remain in custody pending appeal without making appropriate findings). In doing so, we are aware of the likelihood that the passage of time may have rendered the issue of juvenile's custody pending appeal moot. We further note that, as the erroneous order continuing custody of juvenile pending appeal occurred after final adjudication and disposition of juvenile's case, the error by the trial court had no effect on the adjudication or disposition. *See Bullabough*, 89 N.C. App. at 184, 365 S.E.2d at 649; *In re Bass*, 77 N.C. App. 110, 117, 334 S.E.2d 779, 783 (1985) (both holding that post-trial proceedings had no effect on the adjudication and disposition of the juveniles).

**[5]** By his final assignment of error, juvenile contends that the recordation procedures for transcribing juvenile court proceedings are inadequate to protect juvenile's rights. Juvenile contends that, as there was no official court reporter, and as there were certain portions of the taped testimony that were inaudible and thus not transcribed, the transcript in the instant case is incomplete and inadequate to preserve juvenile's rights on appeal. We disagree.

Under the Juvenile Code,

[a]ll adjudicatory and dispositional hearings and hearings on probable cause and transfer to superior court shall be recorded by stenographic notes *or by electronic or mechanical means.*

IN RE LINEBERRY

[154 N.C. App. 246 (2002)]

Records shall be reduced to a written transcript only when timely notice of appeal has been given. The court may order that other hearings be recorded.

N.C. Gen. Stat. § 7B-2410 (2001) (emphasis added). Thus, the statute specifically provides for recordation of juvenile proceedings. Where a trial transcript is "entirely inaccurate and inadequate," precluding formulation of an adequate record and thus preventing appropriate appellate review, a new trial may be granted. *State v. Sanders*, 312 N.C. 318, 320, 321 S.E.2d 836, 837 (1984) (per curiam). Such, however, is not the case here. Instead, as was the case in *State v. Hammonds*, 141 N.C. App. 152, 541 S.E.2d 166 (2000), *affirmed per curiam*, 354 N.C. 353, 554 S.E.2d 645 (2001), our review of the record reveals that "the transcript, despite its imperfections, is not so inaccurate as to prevent meaningful review by this Court." *Id.* at 168, 541 S.E.2d at 178. *See also State v. McLaughlin*, 323 N.C. 68, 108, 372 S.E.2d 49, 75 (1988) (noting that, "[a]lthough the transcript in the case *sub judice* cannot be described as a model of reporting service, it is not so inaccurate as to prevent this Court from reviewing it for errors in defendant's trial"), *judgment vacated and remanded on other grounds*, 494 U.S. 1021, 108 L. Ed. 2d 601 (1990). We therefore overrule juvenile's final assignment of error.

In conclusion, we hold that the trial court did not err in adjudicating juvenile to be delinquent. We therefore affirm this order. We further hold that the trial court erred in finding that juvenile's refusal during court-ordered therapeutic treatment to admit to the offenses for which he was adjudicated delinquent was a factor justifying his continued custody pending appeal. We therefore vacate this order and remand juvenile's case to the trial court for proceedings not inconsistent with this opinion.

The 12 January 2001 order of the trial court adjudicating juvenile delinquent is hereby

Affirmed.

The 29 June 2001 order of the trial court continuing custody of juvenile pending appeal is hereby

Vacated.

Judges HUDSON and CAMPBELL concur.