McCULLOUGH, Judge.
This juvenile appeal from an adjudication and disposition order is based upon the following: Z.K.J., a fellow resident with the juvenile at Timberwood Group Home, gave testimony of an incident that occurred on 30 March 2003. Z.K.J. testified that, "Ah, that day we were having a group meeting, `cause one of the kids at Timberwood lost his CD's and we were just going on with the group, and I had said I seen the CD's, like, on the table. I didn't know what happened to `em, and, like five or ten minutes later, right soon as I said that, [the juvenile] had hit me right then and Mr. Drew had broke it up." Z.K.J. then testified that the juvenile had hit him on the left side of his face with his fist, but that he had not required any medical attention. Andrew David Jordan testified that he was the shift supervisor on duty at the Timberwood group home at approximately 7:00 p.m. on 30 March 2003. Mr. Jordan testified that one of the group home residents reported some missing CD's and that a group meeting was held to try to resolve the problem. The group members were discussing the missing CD's and Z.K.J. said that he had seen the CD's on a table. After Z.K.J. spoke, "[the juvenile] stood up and just made that straight motion and hit him on the left side of his face. And I stepped in there to stop it."
The juvenile presented no evidence and Judge Moore ordered that the case proceed to disposition. Timothy Ray testified that he had been the court counselor for the juvenile for about six and one-half months. Mr. Ray testified that the juvenile had been placed in the Palmer Drug Daywatch Program on 1 February 2001 and 12 March 2003 for being suspended from school, and had been placed in juvenile detention on 3 May 2001 and 9 December 2002. The juvenile was placed in a multi-purpose group home on 11 June 2002 for ninety days of treatment. The juvenile was certified "At-Risk" by the Youth Enrichment Services Program on 11 July 2002, which led to his placement at the Timberwood Group Home. Mr. Ray recommended that "[the juvenile] be committed to the Department of Juvenile Justice, ah, to be placed in a Youth Development Center for an indefinite term, not to exceed his eighteenth birthday. Ah, that he be-that before being released, that [the juvenile], ah, should have complete substance abuse counseling and anger management." On cross-examination, Mr. Ray testified that the juvenile had a serious problem with anger management. Mr. Ray testified that the juvenile needed help in a more secure environment than a Level III group home. Mr. Ray said that there were Level IV group homes in the state that were equipped to deal with children who had problems with violence. Mr. Ray went on to testify that he did not know what the "At-Risk" certification meant. In response to the questions, "What does it mean? What is he at risk for[,]" Mr. Ray went on to testify that the Timberwood Group Home was a therapeutic group home geared toward children with behavior problems, including aggressiveness. He then testified that the juvenile had received a psychological evaluation but had never spent time in a psychological facility.
Dean Pearson testified that he was the case manager for Youth Enrichment Services (YES). Mr. Pearson was asked "why a group IV home, a lock-down group home would not be appropriate, would you tell the Judge the basis for the reasoning that he should go directly to training school?" Mr. Pearson testified that the psychiatrist makes the determination if a Level IV group home is needed, "[a]nd in [the juvenile's] case, he determined it [sic] a level IV was not what [the juvenile] needed. He felt that [the juvenile] needed to take some responsibility for the behavior which he displays, which he's failed to do."
Mr. Pearson testified that the psychiatrist had not seen the juvenile for approximately two months. The juvenile's attorney asked Mr. Pearson if "[he] felt that [the juvenile] did not need tobe placed in level IV locked facility?" Mr. Pearson answered that, "I can only speak to what I witnessed. You need to talk to him [referring to the psychiatrist]."
The prosecutor asked Mr. Pearson, "According to-is it your understanding from the psychiatrist that a group IV home would have no benefit for [the juvenile]?" Mr. Pearson answered, "Right."
In a 28 May 2003 written order, the juvenile was adjudicated delinquent, with a disposition of commitment to the Department of Juvenile Justice (DJJ) to be placed in a youth development center for an indefinite term not to exceed six months. Furthermore, he was required to complete substance abuse and anger management counseling if available. Pending any appeal from that order, the court ordered the juvenile to remain in custody.
The juvenile raises three issues in this appeal: (I) the trial court erred in ordering the juvenile to remain in custody pending appeal without making appropriate findings; (II) the trial court erred in proceeding to disposition without a risk and needs assessment and a predisposition report; and (III) the trial court erred in committing the juvenile to the division of youth services without hearing testimony from the psychiatrist who examined the juvenile or reviewing the psychiatric report generated from the evaluation. For the reasons stated herein, we find no error in the district court's adjudication and disposition order.
I. Compelling Reasons for Custody Pending Appeal
The juvenile argues the trial court erred in not stating compelling reasons, in writing, concerning his order that the"juvenile [is] to remain in the custody of DJJDP pending the Appeal." We disagree.
In an order retaining custody of the juvenile pending appeal from either an adjudication or disposition order, North Carolina requires the trial court adhere to the following:
Pending disposition of an appeal, the release of the juvenile, with or without conditions, should issue in every case unless the court orders otherwise. For compelling reasons which must be stated in writing, the court may enter a temporary order affecting the custody or placement of the juvenile as the court finds to be in the best interests of the juvenile or the State.
N.C. Gen. Stat. § 7B-2605 (2003) (emphasis added). We have held that when a "compelling reason" is impermissibly made and it is unclear as to the weight the trial court gave that impermissible reason, the court is in error under the statute. In re Lineberry, 154 N.C. App. 246, 255-56, 572 S.E.2d 229, 236 (2002), cert. denied, 356 N.C. 672, 577 S.E.2d 624 (2003) (One of the "compelling reasons" used by the court violated the juvenile's right against self-incrimination.). Furthermore, we have held that under the previous version of N.C. Gen. Stat. § 7B-2605, a court's order holding that an "emergency commitment" was necessary pending appeal, but without stating any "compelling reasons" for this commitment, was in error. In re Bullabough, 89 N.C. App. 171, 183, 365 S.E.2d 642, 649 (1988). However, in both Lineberry and Bullabough, we held the error to be harmless as it did not affect the underlying adjudication or disposition order. Id.; Lineberry, 154 N.C. App. at 256, 572 S.E.2d at 236. In the case at bar, the trial court made the following findings pursuant to the disposition order:
1. That the juvenile is ten years or older and was adjudicated delinquent on:
a) On April 25, 2000 for the offense of concealment.
b) On December 19, 2000 for the offenses of injury [sic] personal property and misdemeanor larceny.
c) On June 6, 2001 for the offense of misdemeanor breaking and entering.
d) On September 24, 2002 for the offense of simple assault.
e) On today's date for the offense of simple assault. That the Court also finds the juvenile to be in willful violation of his juvenile probation as he continues to commit delinquent behavior.
2. That the juvenile's delinquency points are: 6 and his delinquency history is: High and the juvenile has four prior adjudications of delinquency.
* * * *
4. That the juvenile's YES Case Manager, Dean Pearson has informed the Court that the juvenile would not benefit from placement in a Level 4 Treatment facility.
5. That Court Counselor Timothy Ray has testified that all resources for the juvenile have been exhausted.
We hold these findings, though under the disposition order, adequately serve as "compelling reasons" required by N.C. Gen. Stat. § 7B-2605 to support an order to retain custody of the juvenile pending appeal, when they are included in the same written order. The juvenile's repeated delinquency is sufficiently compelling to retain custody over the juvenile pending appeal. Though N.C. Gen. Stat. § 7B-2605 is not clear as to where such compelling reasons should be set out and/or whether they should be made pursuant to a separate hearing, we believe our holding strikes a respectful balance as to the heavy workload of our district courts, as well as the best interest of the juvenile. See, e.g., In re Krauss, 102 N.C. App. 112, 117, 401 S.E.2d 123, 126 (1991) (Once the trial court has found that a certain custody arrangement is in a child's best interest, it is unnecessary for the court to repeat the same finding in every subsequent order.).
This assignment of error is overruled.
II. Proceeding to Disposition Without a Predisposition Report
The juvenile next contends that the trial court abused its discretion in proceeding to disposition without a predisposition report. Defendant argues that the evidence was insufficient to allow the court to proceed. We do not agree.
N.C. Gen. Stat. § 7B-2413 (2003) unambiguously provides that:
The court shall proceed to the dispositional hearing upon receipt of the predisposition report. A risk and needs assessment, containing information regarding the juvenile's social, medical, psychiatric, psychological, and educational history, as well as any factors indicating the probability of the juvenile committing further delinquent acts, shall be conducted for the juvenile and shall be attached to the predisposition report. In cases where no predisposition report is available and the court makes a written finding that a report is not needed, the court may proceed with the dispositional hearing.
Id. (emphasis added). The trial court did not receive a predisposition report. However, in finding of fact no. 3 the courtstated "[t]hat no predisposition report is available and the Court finds [sic] is not needed in order to enter an appropriate disposition in this case." Therefore, the trial court clearly complied with the requirements of N.C. Gen. Stat. § 7B-2413.
We cannot say the court abused its discretion in making such a finding that a predisposition report was not needed based upon the evidence before it. The juvenile was before the court on a Juvenile Petition for misdemeanor assault and a probation violation. The juvenile court counselor testified regarding resources expended on the juvenile and that all resources had been exhausted. He testified that the juvenile had been on a Drug Daywatch program, been in juvenile detention twice, spent ninety days in a multi-purpose group program, continued to display negative behavior at school, and was certified as "At-Risk" by the YES Program where he received individual therapy. Furthermore, the court had before it evidence that the basis of the probation violation motion was that the juvenile had illegally boarded an exceptional children's school bus and assaulted one of the students. The counselor recommended placement in a Youth Development Center. The case manager testified that a level IV group home was not appropriate based upon the opinion of the psychiatrist and that the juvenile needed to take more responsibility for his actions. We hold this evidence was sufficient for the court's finding that a predisposition order was not needed.
This assignment of error is overruled.
III. Psychiatric Testimony and Report
Lastly, the juvenile contends the court abused its discretion in failing to seek either the testimony or report of his psychiatrist. He argues that the court's reliance on hearsay testimony relating the psychiatrist's belief that the juvenile did not need to be placed in a level IV locked facility, was insufficient to find that he did not require such placement. We do not agree.
N.C. Gen. Stat. § 7B-2501 (2003) provides in part:
(a) The dispositional hearing may be informal, and the court may consider written reports or other evidence concerning the needs of the juvenile. The court may consider any evidence, including hearsay evidence as defined in G.S. 8C-1, Rule 801, that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition.
(b) The juvenile and the juvenile's parent, guardian, or custodian shall have an opportunity to present evidence, and they may advise the court concerning the disposition they believe to be in the best interests of the juvenile.
(c) In choosing among statutorily permissible dispositions, the court shall select the most appropriate disposition both in terms of kind and duration for the delinquent juvenile. Within the guidelines set forth in G.S. 7B-2508, the court shall select a disposition that is designed to protect the public and to meet the needs and best interests of the juvenile, based upon:
(1) The seriousness of the offense;
(2) The need to hold the juvenile accountable;
(3) The importance of protecting the public safety;
(4) The degree of culpability indicated by the circumstances of the particular case; and
(5) The rehabilitative and treatment needs of the juvenile indicated by a risk and needs assessment.
(d) The court may dismiss the case, or continue the case for no more than six months in order to allow the family an opportunity to meet the needs of the juvenile through more adequate home supervision, through placement in a private or specialized school or agency, through placement with a relative, or through some other plan approved by the court.
Id. (emphasis added). So long as the disposition is adequately based on the factors of N.C. Gen. Stat. § 7B-2501(c), it is in the substantial discretion of the court to determine both the quantum and what weight to place on the evidence to be elicited during a dispositional hearing for a proper disposition. See In re Powers, 144 N.C. App. 140, 141-42, 546 S.E.2d 186, 187-88 (2001) (where it was not an abuse of discretion by the trial court in its decision not to question the juvenile's parents who had been tendered to the court).
The transcript shows that the trial court wanted to know why the juvenile had not been placed in a level IV group home: "if that's the steps between that-that between that level group home and training school, why is it not considered? That's all I want to know." In response to this question, Mr. Pearson, the YES case manager, testified that, according to the juvenile's psychiatric evaluations, a level IV lock-down facility would not benefit thejuvenile because what he needed was to learn to "take some responsibility for the behavior he displays[.]" Mr. Pearson went on to testify that the juvenile was not on medication for mental conditions and was of average intelligence. He explained that a level IV facility would not benefit the juvenile in terms of teaching responsibility, as it only provided more intensive psychiatric treatment and less freedom.
Despite not having before him the testimony or report of the psychiatrist, this evidence was sufficient to support the trial court's disposition order when applying the factors to be considered under N.C. Gen. Stat. § 7B-2501(c).
This assignment of error is overruled.
Pursuant to the analysis herein, the juvenile in this case was given a fair adjudication and disposition based upon adequate findings by the trial court.
Affirmed.
Judges McGEE and ELMORE concur.
Report Per Rule 30(e).