McCULLOUGH, Judge.
This juvenile appeal arises from the following procedural and factual basis: On 16 July 2001, two juvenile petitions were filed in Mecklenburg County District Court. One petition alleged that W.G.C., a juvenile, was delinquent in that he committed simple assault, indecent liberties with children, and first-degree sexual offense against one victim. The juvenile admitted to the indecent liberties charge during his arraignment, and the State dropped the other two charges. The other petition alleged second-degree sexual offense, attempted second-degree rape, and simple assault against another victim. Pursuant to this later petition, on 23 August 2001, the juvenile was adjudicated delinquent on the charges of second-degree sexual offense and attempted second-degree rape. Atthe disposition hearing on 2 October 2001, the juvenile was sentenced as a Level 2 offender to serve twelve months' probation and ordered to remain in detention pending placement. The juvenile's probation was conditioned upon cooperating with all professionals and treatment plans prescribed for him, and if out-of-home placement became necessary, to abide by all rules and regulations of the placement. By order dated 6 December 2001 he was released from detention to placement in a residential facility. This matter came for review on 30 September 2002 pursuant to a motion to extend his probation based on the fact the juvenile had not completed his prescribed treatment. Upon the juvenile's admission to the allegations in the motion and the court's finding of a factual basis for the admission, his probation was extended to 2 October 2003. His counselor had the discretion to terminate probation if the juvenile was in compliance.
The extended probation came back for review pursuant to a 1 May 2003 motion from the Juvenile Court Counselor (JCC) alleging the juvenile had not been following the treatment plan or the rules of the residential treatment program for the past five months. The JCC's motion was supported by a report concerning a shift in the juvenile's behavior: the juvenile had behaved appropriately during the first year of his residential treatment but had taken a turn for the worse during 2002, such that at times he had to be restrained. The report documented the court's extension of the juvenile's probation on 9 December 2002, directing the delinquent to behave and take advantage of the services being offered to him. The JCC report went on to show that the juvenile's behavior had only gotten worse since the last probation extension, stating the following:
[The juvenile] is very angry and is aware that triggers his rape fantasies and other non-compliant behaviors. [He] has been placed in Anger Management group three times without any success. [He] refuses to work the program and has to be restrained on a regular basis. [His mother] has been very cooperative during this process and has tried on numerous occasions to help her son get back on track. He is not responding to anyone at this point.
Since the last court hearing on 4/10/03, [he] has had a number of outbursts and has destroyed property on several occasions. He has also had an incident where he allegedly swung at a staff member while upset. [He] has improved a little with his participation in groups and completing assignments.
The recommendation of the court was for the juvenile to be committed to the Office of Juvenile Justice (OJJ), a Level 3 disposition. See N.C. Gen. Stat. § 7B-2508 (2003). These same concerns were voiced by the juvenile's treatment team in their reports from the New Hope Carolinas residential facility (New Hope) in Rock Hill, South Carolina. Pursuant to this declining behavior, and specific threats of rape to female staff at New Hope, the juvenile was discharged from the treatment facility on 5 May 2003.
The above reports were brought to light in a probation violation hearing held on 5 May 2003. The transcriptionist of the recorded hearing noted that counsels' microphones were not working. After argument from the juvenile's counsel, the court initially found the juvenile not to be in violation of his probation. Thecourt then engaged in a lengthy discussion with the Assistant District Attorney, the juvenile's mother, the court counselor, and an unidentified male about appropriate placement for the juvenile. Then, an in-chambers conference was held involving the judge, attorneys, and court counselors. Upon further consideration, the court changed its determination and found the juvenile to be in violation of his probation. The court made oral findings pursuant to this determination. The court committed him to the OJJ for an indefinite commitment and ordered sex offender treatment. After finding that there was no appropriate placement where the juvenile could be held pending appeal, the court ordered the juvenile to training school.
The juvenile now raises four issues on appeal as addressed herein: (I) that the juvenile's due process rights were violated by not being present during the off-the-record, in-chambers discussion between the judge, attorneys, and court counselors; (II) the trial court failed to consider any alternatives to the juvenile's commitment to OJJ; (III) the trial court failed to make findings of fact relating to the juvenile's remaining in custody pending this appeal; and (IV) the juvenile's due process rights in this appeal were violated by the inadequate transcript which was caused by the recording problems. For the reasons stated herein, we find the juvenile received a fair hearing.
I. Due Process Rights in a Probation Violation Hearing
The juvenile argues that his due process rights were violated during his probation violation hearing as he was not present duringa conference held in chambers and off the record. He argues that this violated his right to be present at every stage of his hearing pursuant to Article I, § 23 of the North Carolina Constitution. See State v. Thomas, 134 N.C. App. 560, 570, 518 S.E.2d 222, 229-30, appeal dismissed, disc. review denied, 351 N.C. 119, 541 S.E.2d 468 (1999).
The Confrontation Clause in Article I, Section 23 of the North Carolina Constitution "`guarantees an accused the right to be present in person at every stage of his trial.'" State v. Daniels, 337 N.C. 243, 256, 446 S.E.2d 298, 307 (1994) (quoting State v. Payne, 320 N.C. 138, 139, 357 S.E.2d 612, 612 (1987)), cert. denied, 513 U.S. 1135, 130 L. Ed. 2d 895 (1995). This right to be present extends to all times during the trial when anything is said or done which materially affects defendant as to the charge against him. State v. Brogden, 329 N.C. 534, 541, 407 S.E.2d 158, 163 (1991). However, a defendant's right to be present at all stages of his trial does not arise prior to the commencement of trial. State v. Rannels, 333 N.C. 644, 653, 430 S.E.2d 254, 259 (1993).
In the case at bar, the probation violation hearing was held for the juvenile after he had been adjudicated delinquent. The hearing was held pursuant to N.C. Gen. Stat. § 7B-2510(d) (2003), which provides:
(d) On motion of the juvenile court counselor or the juvenile, or on the court's own motion, the court may review the progress of any juvenile on probation at any time during the period of probation or at the end of probation. The conditions or duration of probation may be modified only as provided inthis Subchapter and only after notice and a hearing.
Id. Article 25 of the juvenile code governs dispositions. Probation violation hearings are dispositional, such that, they may be "informal, and the court may consider written reports or other evidence concerning the needs of the juvenile." N.C. Gen. Stat. § 7B-2501(b). We have held that probation violation hearings under this statute are not subject to the Double Jeopardy Clause. In Re O'Neal, 160 N.C. App. 409, 412-13, 585 S.E.2d 478, 480-81, disc. review denied, 357 N.C. 657, 590 S.E.2d 270 (2003) (where we held issues of double jeopardy did not apply to a probation violation hearing because they are dispositional hearings). In a probation violation hearing, all that is required is that there be competent evidence reasonably sufficient to satisfy the judge in the exercise of sound judicial discretion that the defendant has, without lawful excuse, willfully violated a valid condition of probation. Id. In a juvenile probation violation hearing, the trial court must only find by a preponderance of the evidence that a juvenile has violated the conditions of his probation under N.C. Gen. Stat. § 7B-2510(e).
The juvenile relies heavily on In re Lineberry, 154 N.C. App. 246, 250-52, 572 S.E.2d 229, 233-34 (2002), disc. review denied, motion dismissed, 356 N.C. 672, 577 S.E.2d 624 (2003). In Lineberry, we held that the trial court violated Article I, § 23 of the North Carolina Constitution during a hearing, when a conference call was placed to a doctor who had prepared a court-orderedevaluation of the juvenile. Id. This hearing was held after the juvenile's completion of a sex offender evaluation and prior to any order adjudicating the juvenile delinquent. The call was held in chambers, and counsel for the juvenile, the district attorney, and the court counselors had an opportunity to question the doctor about the evaluation and any alternatives to therapy available in lieu of training school for the juvenile. Id. In that case, we found the juvenile's due process rights were violated by his absence, but the trial court's error was held to be harmless beyond a reasonable doubt. Id.
We believe Lineberry is distinguishable from the case at bar. In Lineberry, no order by the court had yet been issued that the juvenile was delinquent. The hearing in that case, held after the juvenile had completed his sex offender evaluation, was still adjudicatory in nature. Thus, constitutional safeguards akin to those concerning a defendant's ability to be present at every stage concerning the criminal charge still applied. See In re Phillips, 128 N.C. App. 732, 734, 497 S.E.2d 292, 293, disc. review denied, 348 N.C. 283, 501 S.E.2d 919 (1998) (holding that the Double Jeopardy Clause applies to juvenile proceedings and attaches when the judge, as trier of fact, begins to hear evidence in the adjudication).
In the case at bar, the hearing was dispositional and less formal, as the juvenile had already been adjudicated delinquent. The hearing did not relate to the charge against the juvenile. See Payne, 320 N.C. at 139, 357 S.E.2d at 612. Therefore, we hold thejuvenile's right to be present at every stage of his trial was not implicated in this dispositional hearing.
This assignment of error is overruled.
II. Trial Court's Consideration of Alternative Commitment
Next, the juvenile contends the trial court failed to fulfill its obligation to consider any alternatives to commitment before committing the juvenile to OJJ. We do not agree.
As stated above, juvenile dispositions in delinquency proceedings are controlled by N.C. Gen. Stat. § 7B-2500, et seq. This includes probation violation hearings. For probation violations occurring on or after 1 July 1999, courts are no longer bound by the language of former N.C. Gen. Stat. § 7A-646 (1998). Under the new Code, the directives found in former § 7A-646 that the trial court "select the least restrictive disposition" which is appropriate and that "[a] juvenile should not be committed to training school or to any other institution if he can be helped through community-level resources" have been deleted. See N.C. Gen. Stat. § 7B-2501(c) (2001). We have determined:
The trial court is now required to "select the most appropriate disposition," one that is designed to "protect the public and to meet the needs and best interests of the juvenile," based on a list of enumerated factors. [N.C. Gen. Stat. § 2501]. A textual analysis shows a more balanced statutory design emphasizing appropriate dispositions, with some limitations, rather than what had been interpreted as a mandate for the least restrictive alternative under the circumstances. See In re Bullabough, 89 N.C. App. 171, 185-86, 365 S.E.2d 642, 650 (1988).
In Re Robinson, 151 N.C. App. 733, 736-37, 567 S.E.2d 227, 299 (2002). N.C. Gen. Stat. § 7B-2510(e) (2003) states the following:
(e) If the court, after notice and a hearing, finds by the greater weight of the evidence that the juvenile has violated the conditions of probation set by the court, the court may continue the original conditions of probation, modify the conditions of probation, or, except as provided in subsection (f) of this section, order a new disposition at the next higher level on the disposition chart in G.S. 7B-2508. In the court's discretion, part of the new disposition may include an order of confinement in a secure juvenile detention facility for up to twice the term authorized by G.S. 7B-2508.
In applying this more balanced statutory scheme, the law affords the trial court reasonable discretion in weighing the facts and circumstances during a disposition hearing for a probation violation.
The juvenile has not alleged, nor can we find, any abuse of discretion by the trial court in ordering the juvenile from a Level 2 commitment to a Level 3 commitment, and ordering he be placed in OJJ for an indefinite commitment. The judge was well within his discretion in ordering a higher level of commitment for the juvenile based on his probation violation: the underlying adjudications were for second degree sex offense and attempted second degree rape, both "violent" under N.C. Gen. Stat. § 7B-2508; he was reported to be having violent rape fantasies in response to his anger, threatening to rape specific female staff at the New Hope facility; his participation in Anger Management groups wasunsuccessful; and he had been administratively discharged from residential treatment at New Hope on the day of the hearing.
This assignment of error is overruled.
III. Custody Pending Appeal
Next, the juvenile contends the court erred in failing to fulfill its statutory obligations under N.C. Gen. Stat. § 7B-2605 (2003) when keeping a juvenile in custody pending appeal from an adjudicatory or dispositional order. The State conceded the error.
N.C. Gen. Stat. § 7B-2605 requires that:
Pending disposition of an appeal, the release of the juvenile, with or without conditions, should issue in every case unless the court orders otherwise. For compelling reasons which must be stated in writing, the court may enter a temporary order affecting the custody or placement of the juvenile as the court finds to be in the best interests of the juvenile or the State.
When the court has failed to state in writing these compelling reasons, or has made inadequate or unconstitutional reasons, we have found error. Lineberry, 154 N.C. App. at 251-54, 572 S.E.2d at 234-35 (Where one of the compelling reasons offered by the court was in violation of the juvenile's privilege against self-incrimination, we deemed this as error because the weight placed on this compelling reason could not be discerned.).
In the case at bar, the transcript contains a finding made orally and in open court that there was "no appropriate placement where the juvenile may be held pending the appeal process," and the juvenile was therefore committed to OJJ. Even had this been in writing, we note that this is clearly insufficient under therequirements of N.C. Gen. Stat. § 7B-2605, as it is a conclusive determination and offers no compelling reasons for the determination. However, because this determination in no way prejudiced the disposition order finding the juvenile in violation of his probation and ordering him to the same commitment where he was to be held pending appeal, the error was without prejudice. Lineberry, 154 N.C. App. at 256, 572 S.E.2d at 236; see In re Bullabough, 89 N.C. App. at 184, 365 S.E.2d at 649. Furthermore, we acknowledge that passage of time may have made this issue moot for this particular juvenile as he may have already been released from the custody of OJJ.
This assignment of error is overruled.
IV. Hearing Transcript
The juvenile lastly contends that he was denied due process in this appeal based on the incomplete transcript composed for our review. The transcript was incomplete due to poor recording microphones used at the 5 May 2003 juvenile session. After close review of the transcript, we believe it was sufficient for our review by fully illuminating the basis for the trial court's disposition order.
The juvenile has failed to identify any particular claim or issue which the incomplete transcript denies his ability to raise on appeal. See State v. Sanders, 312 N.C. 318, 320, 321 S.E.2d 836, 837 (1984) (awarding new relief where flaws in the transcript prevented review of jury instructions at death penalty phase of murder trial). "Where `the transcript, despite its imperfections,is not so inaccurate as to prevent meaningful review by this Court[,]' the assertion that the recordation of juvenile court proceedings are inadequate to protect juvenile's rights is properly overruled." In re Hartsock, 158 N.C. App. 287, 293, 580 S.E.2d 395, 399 (2003) (quoting State v. Hammonds, 141 N.C. App. 152, 168, 541 S.E.2d 166, 178 (2000), aff'd, 354 N.C. 353, 554 S.E.2d 645 (2001), cert. denied, 536 U.S. 907, 153 L. Ed. 2d 184 (2002)). We hold the hearing transcript is sufficient to allow for meaningful review of the district court proceedings.
This assignment of error is overruled.
Therefore, we conclude that the juvenile received a fair dispositional hearing on the motion to review his probation, and furthermore that the record, transcripts, and briefs, provided this Court with a sufficient review of those proceedings. We note that any assignments of error not raised in the juvenile's brief are deemed abandoned pursuant to Rule 28(b)(6) of the North Carolina Rules of Appellate Procedure.
Affirmed.
Judges McGEE and ELMORE concur.
Report per Rule 30(e).