STATE OF NORTH CAROLINA
v.
MARY ANN WIGGINS.
No. COA07-492
Court of Appeals of North Carolina.
Filed November 6, 2007
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Amy L. Funderburk, for the State.
Terry F. Rose, for defendant-appellant.
ELMORE, Judge.
Defendant appeals from a judgment revoking her probation and activating her suspended prison sentence of fifteen to eighteen months. We affirm.
On 10 January 2006, defendant pled guilty to failure to register as a sex offender. Under the terms of her plea bargain, she agreed to be "placed on supervised probation with drug and search clauses[,]" and to "register with the Henderson Co[unty] Sheriff's Dep[artment] immediately and promptly notify them of any change of address." In accordance with the plea agreement, the trial court imposed an intermediate punishment, suspending a fifteen to eighteen month prison sentence and placing defendant on supervised probation for twenty-four months. As a special condition of her probation, defendant was assigned to the Intensive Supervision Program for six months and ordered to "comply with the rules adopted by that program." See N.C. Gen. Stat. §§ 15A-1343(b1)(3b), 143B-262(c) (2005). The judgment explicitly referred to "Cond[ition]s A-G" of the Intensive Supervision Program. As an additional special condition of probation, the court required defendant to register as a sex offender with the Henderson County Sheriff's Department "as required by law . . . ."
A report filed on 15 September 2006 charged defendant with the following violations of her probation: (1) testing positive for methamphetamine use on 31 January 2006, 24 May 2006, and 5 June 2006; (2) failing to pay $480.00 toward the monetary conditions of her probation; and (3) changing her place of residence on 24 August 2006 without notifying the sheriff's department, as required of a registered sex offender. At a hearing held 28 November 2006, defendant's probation officer, David Oates, testified that she testified positive for methamphetamine use as alleged in his violation report, that she had a $480.00 arrearage in her monthly probation fees, and that she moved from her residence in Henderson County to Polk County on 24 August 2006 without notifying the Henderson or Polk County Sheriff's Departments. Defendant told Oates "that she used methamphetamine because of her lack of energy" caused by a medical condition. She further claimed not to have sufficient income to pay the costs of probation. Defendant gave Oates no explanation for her failure to contact the sheriff regarding her change of residence.
Defendant introduced evidence that she did not move to Polk County until 9 September 2006, and thus was not in violation of the sex offender registration statute at the time the violation report was filed on 15 September 2006. N.C. Gen. Stat. § 14-208.9(a) (2005) (providing ten days for registered sex offenders to notify the sheriff of a change of address). Defendant further averred that she used methamphetamine to treat her multiple sclerosis but had not taken any illegal drugs since testing positive for methamphetamine on 5 June 2006.
The trial court revoked defendant's probation and activated her sentence, finding that she committed each of the alleged violations willfully and without lawful excuse. The judgment includes an additional finding by the court that "[e]ach violation is, in and of itself, a sufficient basis upon which this Court should revoke probation and activate the suspended sentence." Defendant gave timely notice of appeal.
Defendant first claims that the trial court erred in revoking her probation based on her use of methamphetamine, because the judgment entered on 10 January 2006 did not require her to submit to drug testing or to refrain from using illicit drugs as conditions of her probation. While acknowledging that she was subject to the rules of the Intensive Supervision Program and "Cond[tions] A-G" as a special condition of probation, defendant argues that "[n]owhere on the form recording the judgment" do these rules and conditions appear.
"In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make[,]" and must have "obtain[ed] a ruling" thereon. N.C.R. App. P. 10(b)(1) (2007). Accordingly, a defendant who fails to challenge a condition of probation at the revocation hearing cannot raise the issue on appeal from the judgment entered upon revocation. See State v. Cooper, 304 N.C. 180, 183, 282 S.E.2d 436, 439 (1981) ("[H]old[ing] that [a] defendant cannot relitigate the legality of a condition of probation unless he raises the issue no later than the hearing at which his probation is revoked."); State v. Tozzi, 84 N.C. App. 517, 520, 353 S.E.2d 250, 252 (1987) ("[D]efendants may not raise an initial objection to a condition of probation . . . on appeal, but must first object no later than the revocation hearing."). Because defendant did not challenge the conditions of her probation related to use of controlled substances at trial, she has waived appellate review of this issue pursuant to Rule 10(b)(1).
We note that defendant's plea agreement provided for "drug and search clauses" as conditions of her probation. The judgment entered on 10 January 2006 required her to spend six months in the Intensive Supervision Program as a special condition of probation, ordered her to "comply with the rules adopted by that program[,]" and referred specifically to "cond[ition]s A-G" thereof. See N.C.Gen. Stat. §§ 15A-1343(b1)(3b), 143B-262(c) (2005). Pursuant to N.C. Gen. Stat. § 143B-262(c), the Department of Correction's Division of Community Corrections is obliged to create rules and regulations for the Intensive Supervision Program. All defendants placed on intensive supervision under N.C. Gen. Stat. § 15A-1343(b1)(3b) are "required to comply with the rules adopted for the Program . . . ." N.C. Gen. Stat. § 143B-262(c) (2005). The record on appeal includes the "Division of Community Corrections Intermediate Punishment Offender Rules and Regulations," listing the Division's seven rules for Intensive Supervision, designated (a)-(g). Rule (b) forbids a defendant on intensive supervision to "[u]se, possess or control any illegal drug or controlled substance unless it has been prescribed for the defendant by a licensed physician . . . ." Rule (c) requires the defendant to "[s]upply a breath, urine and/or blood specimen for analysis of the possible presence of a prohibited drug or alcohol, when instructed by the Probation Officer." We find that the judgment entered on 10 January 2006 incorporated by reference rules (a)-(g) of the Intensive Supervision Program.
Defendant next claims that the court erred in revoking her probation based on methamphetamine use, absent evidence that she continued to use controlled substances after her six month term of intensive supervision expired. She notes that her probation officer delayed filing the violation report until September of 2006, months after her last positive drug test on 5 June 2006 and the expiration of her intensive supervision on 10 July 2006. Defendant's argument has no merit. The State proved, and defendant admitted, that she used methamphetamine on three occasions while subject to intensive supervision. This evidence was sufficient to support revocation. See Tozzi, 84 N.C. App. at 521, 353 S.E.2d at 253 ("Any violation of a valid condition of probation is sufficient to revoke [a] defendant's probation."). Defendant cites no authority requiring a violation report to be filed within a certain period following the subject violation, provided the report is filed during the term of probation. See N.C. Gen. Stat. § 15A-1344(f) (2005); see also N.C.R. App. P. 28(b)(6) (2007).
Defendant next challenges the court's finding that she willfully failed to satisfy the monetary conditions of her probation. However, we again find that defendant has failed to preserve this issue for appellate review. Under N.C.R. App. P. 10(a), "the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal . . . ." N.C.R. App. P. 10(a) (2007). Because defendant has not assigned error to the court's finding in the record on appeal, her argument is not properly before this Court. N.C.R. App. P. 10(a), (c)(1) (2007). Moreover, any error in this finding is harmless, in light of the trial court's finding that each of defendant's violations was alone sufficient to support revocation. State v. Belcher, 173 N.C. App. 620, 625, 619 S.E.2d 567, 570 (2005) (citing State v. Braswell, 283 N.C. 332, 337, 196 S.E.2d 185, 188 (1973)). Defendant also claims that the court abused its discretion in revoking her probation for failure to notify the sheriff of her change of address, in violation of the sex offender registration law. N.C. Gen. Stat. § 14-208.9(a) (2005). She notes that non-compliance with N.C. Gen. Stat. § 14-208.9(a) is criminalized as a Class F felony by N.C. Gen. Stat. § 14-208.11(a). Because the standard of proof at a probation revocation hearing is less exacting than the standard applied at a criminal trial, defendant argues that her violation of N.C. Gen. Stat. § 14-208.9(a) "could not be a violation of probation unless and until [she] either pled guilty to such an act or was found guilty by a jury beyond a reasonable doubt."
In order for the court to find that a defendant has violated her probation, "a jury is not required . . . nor must the proof of violation be beyond a reasonable doubt." State v. Freeman, 47 N.C. App. 171, 175, 266 S.E.2d 723, 725 (1980). "All that is required to revoke probation is evidence satisfying the trial court in its discretion that the defendant violated a valid condition of probation without lawful excuse." Tozzi, 84 N.C. App. at 521, 353 S.E.2d at 253.
The conditions of defendant's probation did not require her to avoid being convicted of a crime. Rather, she was required to "[c]ommit no criminal offenses" and to "register [as a sex offender] as required by law . . . ." The court was thus free to find that defendant violated her probation by failing to comply with the sex offender registration law, irrespective of any criminal prosecution or conviction under N.C. Gene. Stat. § 14-208.11(a). Oates' testimony that defendant failed to notify the sheriff within ten days of changing residences on 24 August 2006 was sufficient to support the court's finding that defendant failed to comply with N.C. Gen. Stat. § 14-208.9(a). Moreover, given the validity of the first violation found by the court, any error regarding this additional violation was harmless. Belcher, 173 N.C. App. at 625, 619 S.E.2d at 570 (citing Braswell, 283 N.C. at 337, 196 S.E.2d at 188).
In her final argument, defendant faults the court for revoking her probation based on her assertion of her Fifth Amendment privilege against self-incrimination at the revocation hearing. The transcript reflects that defendant offered the following testimony when asked about her source for methamphetamine on cross-examination:
Q. Who gave [the drugs] to you?
A. Who gave them to me?
Q. Yeah.
A. I don't know.
. . .
Q. How do you not know who gave you these drugs?
A. Sometimes when I walk in my house and there's someone there that  I don't know where it came from.
When pressed further about how she obtained methamphetamine, defendant explained that she "lived in a place that was known for drugs." The court interjected, engaging defendant as follows:
THE COURT: Well, who gave them to you?
THE WITNESS: They  when I came home, sometimes they were there.
THE COURT: You don't know any names?
THE WITNESS: I plead the Fifth.
THE COURT: All right, ma'am. It's you that's facing fifteen or eighteen months.
THE WITNESS: Sir, if there's a group of people sitting around 
THE COURT: If you want to give us some names, I'll listen.
. . .
A. Could I do that in private, please.
THE COURT: You may answer the question if you care to answer it.
THE WITNESS: There were some people that I did not know there and then there was a couple of people that I was familiar with. One of them was my cousin, Bill Watkins.
The court then asked defendant how long she had been using methamphetamine. She replied, "I haven't. I have been clean for fifteen years." She then conceded that she used the drug in "[t]hree different months: January, May, [and] June" of 2006, but insisted that she "didn't use constantly."
We find no indication that defendant's probation was revoked due to her exercise of her Fifth Amendment rights. The trial court did not find her in violation of her probation for refusing to testify. Nor was defendant placed in the "classic penalty situation" of being forced to waive her Fifth Amendment rights in order to comply with the conditions of her probation. In re Lineberry, 154 N.C. App. 246, 253-54, 572 S.E.2d 229, 235 (2002). Indeed, defendant did not stand on her Fifth Amendment privilege but answered the court's query by naming her cousin. Finally, we believe the court was entitled to consider defendant's lack of candor in exercising its discretion in this matter.
Affirmed.
Judges WYNN and BRYANT concur.
Report per Rule 30(e).